228 N.J. Super. 468 (1988)
550 A.2d 171
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
MATTHEW MCKENNA, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted August 30, 1988.
Decided November 4, 1988.
*470 Before Judges ANTELL and GRUCCIO.
Alfred A. Slocum, Public Defender, attorney for appellant (Stephen A. Caruso, Assistant Deputy Public Defender, of counsel and on the brief).
W. Cary Edwards, Attorney General of New Jersey, attorney for respondent (Janet Flanagan, Deputy Attorney General, of counsel and on the brief).
The opinion of the court was delivered by GRUCCIO, J.A.D.
Defendant Matthew D. McKenna and others were indicted for possession of a controlled dangerous substance with intent to distribute, N.J.S.A. 24:21-19(a)(1), (count one), possession of a controlled dangerous substance, N.J.S.A. 24:21-20(a)(1), (count two), and conspiracy to distribute a controlled dangerous substance, N.J.S.A. 24:21-19(a)(1), N.J.S.A. 2C:5-2 and N.J.S.A. 24:21-24, (count three). Defendant pled not guilty to the indictment and moved to suppress the evidence seized at the time of his arrest. Following the denial of a suppression motion, defendant entered a retraxit plea of guilty to all three counts of the indictment and, as part of a plea arrangement, agreed to testify truthfully against any codefendants. The State agreed to recommend that a custodial sentence of five years with a two and one-half year parole disqualifier be imposed.
At sentencing, the judge merged counts two and three into count one and, in accordance with the plea arrangement, imposed a five year custodial term with a two and one-half year period of parole ineligibility and a $30 Violent Crimes Compensation Board penalty. On appeal defendant contends:
1. The court below erred in not granting the motion to suppress since the warrantless search of the defendant violated the protections guaranteed by the federal and New Jersey constitutions.
2. The sentence imposed by the trial judge is excessive and inappropriate under the mandate of the Code of Criminal Justice.
*471 On May 23, 1986, Somerset County Detective Scott Fabiano arrested Roy Cunningham on charges of possession of methamphetamine with the intent to distribute. Cunningham consulted with his attorney and agreed to cooperate with the police and reveal his suppliers' names. In furtherance of his agreement to cooperate, Cunningham placed a telephone call to one of his suppliers in Philadelphia. Detective Fabiano was present and listened in on the conversation in which a price was discussed and arrangements were made for Cunningham to purchase methamphetamine. Cunningham told the supplier to deliver the drugs to his apartment because his car was inoperative. The supplier agreed and said he would call back with the details of the purchase.
Approximately one hour later, Cunningham received a call indicating the purchase price would be $10,500 rather than the previously quoted $10,000. However, the caller indicated that the price would be negotiable upon delivery. The contact told Cunningham that he was about to leave Philadelphia and would be there in about one hour. At about 3:50 p.m., Cunningham received a call indicating a one-hour delay in the delivery of the drugs. A police surveillance was set up with detectives inside and outside of Cunningham's apartment.
At approximately 4:40 p.m., a gray Lincoln Continental with four occupants pulled up to Cunningham's apartment. One of the passengers fit the description of the individual "with a shaved head" that Cunningham had given the police. Cunningham was able to describe the suppliers because he previously met them. This person, later identified as defendant, alighted from the vehicle and walked up the steps leading to Cunningham's apartment. As defendant reached the door he stopped, turned toward the vehicle and told one of the other passengers to "bring it up." A passenger, later identified as defendant's brother codefendant Brian McKenna, got out of the car and approached the apartment. He had a newspaper under his left arm which had aluminum foil protruding out of the end. Brian *472 McKenna fit the description of the second suspect that Cunningham had given.
Defendant knocked on Cunningham's door and was arrested by Detectives Andrew Hissim and Scott Fabiano. The gray Lincoln started to pull away as Investigator Richard Myers approached Brian McKenna. McKenna attempted to run away but was apprehended and arrested by the police officers. Investigator Myers seized the package Brian McKenna had been carrying, opened the aluminum foil and discovered a brownish chunky substance suspected to be methamphetamine. In an effort to locate the gray Lincoln, Detective Richard Ike ran out into the roadway and noticed the car pulling out a side street headed in his direction. He stopped the vehicle and arrested the driver and passenger.
Defendant testified and admitted going to Cunningham's apartment with the intent to deliver methamphetamine. He claimed that he, rather than his brother Brian McKenna, carried the newspaper containing the drugs under his arm. Defendant contended that the package of drugs fell to the ground during his arrest. The methamphetamine seized weighed 450.3 grams (15 3/4 ounces) and had an approximate street value of $36,000.
Defendant contends that the trial court committed reversible error in denying his motion to suppress. Specifically, he asserts that his arrest and search incident to the arrest were illegal. We disagree.
We first observe that the Fourth Amendment of the United States Constitution and Article I, paragraph 7 of the New Jersey Constitution do not proscribe all searches and seizures, but only those that are judicially deemed unreasonable. State v. Anderson, 198 N.J. Super. 340, 348 (App.Div.), certif. den. 101 N.J. 283 (1985). Where the State can prove the overall reasonableness and validity of such a search, the presumption of invalidity will be overcome. State v. Bruzzese, 94 N.J. 210, 216-218 (1983), cert. den. 465 U.S. 1030, 104 S.Ct. 1295, 79 *473 L.Ed.2d 695 (1984). See Delaware v. Prouse, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979).
In United States v. Watson, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976), the United States Supreme Court stated that warrantless arrests based on probable cause and made in a public place are permissible under the Fourth Amendment even though the police had sufficient time to obtain a search warrant. There, the Supreme Court upheld an arrest where a postal inspector, upon reliable information that a defendant was engaged in selling stolen credit cards, arranged a meeting between the informant and defendant at a restaurant where defendant was subsequently arrested. The Court observed that the imposition of a requirement of more than probable cause in warrantless arrests would "encumber criminal prosecutions with endless litigation with respect to the existence of exigent circumstances, whether it was practicable to get a warrant, whether the suspect was about to flee, and the like." Id. at 423-424, 96 S.Ct. at 828, 46 L.Ed.2d at 609.
Professor LaFave in his treatise points out that an overwhelming number of jurisdictions firmly hold to this position. 2 LaFave, Search and Seizure, A Treatise on the Fourth Amendment, § 5.1b, at 395 (1987). See People v. Adams, 150 Mich. App. 181, 388 N.W.2d 254 (1986) (front steps to an apartment building are considered a public place, thus police officers who have probable cause to arrest do not need a warrant); State v. Johnson, 395 N.W.2d 661 (Iowa Ct. App. 1986) (police officers are not required to obtain a warrant before apprehending a suspected felon in a public place if they possess reliable information sufficient to establish probable cause); People v. Lekas, 155 Ill. App.3d 391, 108 Ill.Dec. 60, 508 N.E.2d 221, cert. den. ___ U.S. ___, 108 S.Ct. 1123, 99 L.Ed.2d 283 (1987) (doorway to a house is considered a public place in which there is no expectation of privacy for purposes of determining the constitutionality of a warrantless arrest); Funk v. State, 427 N.E.2d 1081 (Ind. 1981) (the observations made during the surveillance of defendant's motel room combined with a tip from a citizen *474 and other information indicating that defendant was a known burglar was sufficient evidence to establish probable cause to arrest defendant for burglary). New Jersey expressly sanctions warrantless arrests based on probable cause. Our State follows the common law of arrest which permits a police officer to effect a warrantless arrest upon probable cause that a crime has been or is being committed by the person being arrested. State v. Fariello, 71 N.J. 552 (1976); State v. Doyle, 42 N.J. 334 (1964); State v. Perez, 176 N.J. Super. 292 (App.Div.), certif. den. 85 N.J. 464 (1980).
Defendant was arrested on the front steps of Cunningham's apartment which is unquestionably a public place wherein defendant and his associates had no expectation of privacy. See United States v. Santana, 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976); People v. Dalton, 155 Mich. App. 591, 400 N.W.2d 689 (1986). Thus, our inquiry does not focus on whether a warrant could have been obtained, but rather on the determination of probable cause for the arrest. Probable cause for an arrest exists when an officer has a well-founded suspicion or belief of guilt which may constitute something less than the proof needed to convict and something more than a raw, unsupported suspicion. State v. Bates, 202 N.J. Super. 416 (App.Div. 1985); State v. Davis, 50 N.J. 16 (1967), cert. den. 389 U.S. 1054, 88 S.Ct. 805, 19 L.Ed.2d 852 (1968); State v. Burnett, 42 N.J. 377 (1964). It is not a technical concept but one drawn from "the practical considerations of everyday life" as tested by the reasonable person standard. Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed.2d 1879 (1949); State v. Esteves, 93 N.J. 498 (1983). The State correctly summed up the facts establishing probable cause:
The officers knew what was happening because they were involved in setting it up with Mr. Cunningham. They knew what was occurring and what was being delivered and they had the description of the two individuals, who the officers testified left the Lincoln to walk to Mr. Cunningham's apartment, as they were described by Mr. Cunningham.

*475 The officers had a right and indeed an obligation to react to what they understood in a reasonable fashion was a crime being committed in their presence and what they did was lawful.
It is clear to us that the facts and circumstances as presented by the State and found credible by the motion judge were more than sufficient to warrant a person of reasonable caution to believe that defendant and his associates were drug dealers. The probable cause requirement for defendant's arrest and seizure of the drugs clearly existed. As the motion judge stated:
To suggest that the police didn't suspect or have reasonable belief that what was happening here was a delivery, purchase and sale of methamphetamine is a ludicrous argument. Most certainly, they did. And they had every reason to suspect and believe that a crime was being committed and they placed these gentlemen under arrest. One of them, Brian McKenna, obviously, aware of what was about to happen, namely, that he was going to be caught in the act, started or attempted to flee and he was stopped and he was arrested and, certainly this search can be justified on the ground that it was incident to a lawful arrest for which there was more than probable cause to arrest in this case.
The motion judge's findings and conclusions are clearly supported by the record and are binding on us. State v. Johnson, 42 N.J. 146, 162 (1964).
Defendant also complains that the plea agreement he entered into and the sentence imposed in accordance with that agreement are excessive and inappropriate under the Code of Criminal Justice. He claims that he is entitled to the presumption against incarceration despite the fact that he has a prior simple assault conviction which violated his probation; that he is eligible for treatment under the Youthful Offenders Act, N.J.S.A. 2C:43-5 since he was 25 years old at the time of the sentencing, and that the sentencing judge did not consider any relevant mitigating factors.
We first observe that the Penal Code clearly establishes the severity of the crime as the most important factor to be considered by the sentencing judge. State v. Hodge, 95 N.J. 369, 379 (1984). Our review of a sentence is a limited one. We examine the record and determine whether the trial court *476 correctly applied the sentencing guidelines and weighed the aggravating and mitigating factors supported by competent, credible evidence. State v. Roth, 95 N.J. 334, 343-346 (1984). We then determine if the sentencing judge applied the correct legal principles in exercising the discretion given the trial courts. Ibid.
Our review of the record indicates that the sentencing judge carefully followed the statutory criteria in imposing the sentence on defendant. He did so in accordance with a negotiated plea bargain freely entered into by defendant. The sentencing judge stated:
This evidence and the statement you gave police officers detailing your prior drug sales correctly identify you as a major distributor.
A review of your report indicates you had a normal upbringing in a large family. You're a school dropout.
You have apparently had a stable work record, although you were unemployed at the time of your arrest.
You have been using methamphetamine or had been sporadically for the past one-and-a-half years, and you also indicate that you are also an alcoholic.
This is your first indictable conviction, but you failed to cooperate with probation authorities under a two-year term of supervision and a violation of probation charge is awaiting adjudication.
And I do note that you were willing to cooperate with the State as requested. There's no doubt that your involvement in the present offense was not an isolated incident based upon your statement to the arresting officers, and that you were engaged in an ongoing criminal enterprise with drug distributors in New Jersey and Philadelphia.
With the profits which are inherent to the drug trade which seem to act to [sic] the incentive to would-be dealers who become involved in this activity, and the only effective response to convicted drug dealers and those who may be thinking of that potential enterprise is the deterrence of prison sentences when caught with parole ineligibility.
The trial judge's analysis of the statements regarding the aggravating and mitigating factors applicable to defendant and the very serious drug offenses for which he stands convicted are substantiated reasons for not sentencing defendant to the Youth Correctional Institution.
We find the record clearly supports the conclusion that defendant received a proper sentence which complied with both the legislative enactment and our judicial decisions. The sentence *477 imposed was fair and just for this serious drug crime. The sentence fits the crime and the criminal.
AFFIRMED.