262 N.J. Super. 7 (1993)
619 A.2d 1016
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
SEAN STYKER, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 4, 1992.
Decided January 19, 1993.
*8 Before Judges MICHELS and BAIME.
Matthew R. Schutz, Designated Counsel, argued the cause for appellant (Zulima V. Farber, Public Defender, attorney; Mr. Schutz, of counsel and on the brief).
Arthur S. Safir, Deputy Attorney General, argued the cause for respondent (Robert J. Del Tufo, Attorney General of New Jersey, attorney; Mr. Safir, of counsel and on the letter brief).
The opinion of the court was delivered by MICHELS, P.J.A.D.
*9 Tried to a jury, defendant Sean Styker was convicted of armed robbery, a crime of the first degree, in violation of N.J.S.A. 2C:15-1 (First Count), and simple assault, a disorderly persons offense, in violation of N.J.S.A. 2C:12-1a, a lesser-included offense of the crime charged in the Second Count of his Indictment. The trial court committed defendant to the custody of the Commissioner of the Department of Corrections for fifteen years and assessed a $30 Violent Crimes Compensation Board (VCCB) penalty for the armed robbery conviction under the First Count. Additionally, defendant was sentenced to a concurrent six-month jail term and assessed a $30 VCCB penalty for the simple assault conviction under the Second Count. Defendant appeals.
Defendant seeks a reversal of his convictions or, alternatively, a modification of his sentence, based on the following grounds set forth in his brief:
I. WHERE THE COURT IMPROPERLY CHARGES THE JURY A DEFENDANT IS ENTITLED TO A NEW TRIAL.
II. UNDER THE CIRCUMSTANCES IN THIS CASE THE COURT SHOULD HAVE HELD A WADE HEARING.
III. THE DEFENDANT'S RIGHT TO A SPEEDY TRIAL WAS DENIED IN THIS MATTER.
IV. THE DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL WHERE COUNSEL FAILED TO VIGOROUSLY REPRESENT THE CLIENT.
V. WHERE THE EVIDENCE AGAINST THE DEFENDANT DOES NOT PROVE HIS GUILT BEYOND A REASONABLE DOUBT, THE DEFENDANT MUST BE ACQUITTED.
VI. WHERE THE DEFENDANT IS UNDER AGE 26 AT THE TIME OF SENTENCING HE IS ENTITLED TO BE SENTENCED UNDER THE YOUTH OFFENDER ACT UNLESS THE COURT PLACES FINDINGS ON THE RECORD THAT HE SHOULD BE SENTENCED AS AN ADULT OFFENDER.
We have carefully considered these contentions, and all of the arguments advanced by defendant in support of them, and find that, with the sole exception of defendant's challenge to the legality and propriety of his sentence for first degree armed *10 robbery, they are clearly without merit and require no further discussion. R. 2:11-3(e)(2).
As noted previously, defendant was convicted of first degree armed robbery in violation of N.J.S.A. 2C:15-1. There is a presumption of imprisonment for convictions of first and second degree crimes. N.J.S.A. 2C:44-1d. The permissible sentence of imprisonment for a first degree crime is between ten and twenty years. N.J.S.A. 2C:43-6a(1). Moreover, the presumptive term for such a crime is fifteen years. N.J.S.A. 2C:44-1f(1)(b). Here, the trial court imposed the presumptive term of fifteen years after carefully weighing the aggravating and mitigating factors and determining that they were in equipoise.
Defendant challenges the legality and propriety of his sentence of imprisonment for armed robbery, claiming that, because he was under twenty-six years of age at the time of sentencing, he was entitled to be treated as a youthful offender in accordance with N.J.S.A. 2C:43-5, and sentenced thereunder to an indeterminate term at the Youth Correctional Institution Complex (Youth Complex).
N.J.S.A. 2C:43-5 provides:
Any person who, at the time of sentencing, is less than 26 years of age and who has been convicted of a crime may be sentenced to an indeterminate term at the Youth Correctional Institution Complex, in accordance with R.S. 30:4-146 et seq., in the case of men, and to the Correctional Institution for Women, in accordance with R.S. 30:4-153 et seq., in the case of women, instead of the sentences otherwise authorized by the code. This section shall not apply to any person less than 26 years of age at the time of sentencing who qualifies for a mandatory minimum term of imprisonment without eligibility for parole, pursuant to subsection c. of N.J.S. 2C:43-6; however, notwithstanding the provisions of subsection c. of N.J.S. 2C:43-6, the mandatory minimum term may be served at the Youth Correctional Institution Complex or the Correctional Institution for Women. [Emphasis added].
While the language of this statute is plainly discretionary, defendant relies on State v. McBride, 66 N.J. 577, 334 A.2d 27 (1975), which construed the predecessor of N.J.S.A. 2C:43-5 to mean that "[a] youthful offender eligible for sentence to the *11 [Youth] Complex should ordinarily be sentenced there unless good and substantial reasons exist for not so doing." 66 N.J. at 580, 334 A.2d 27. However, State v. McBride was decided prior to the broad revision of our criminal law which was accomplished by the enactment of the New Jersey Code of Criminal Justice (Code). See N.J.S.A. 2C:1-1, et seq. (L. 1978, c. 95, § 2C:1-1, et seq., effective Sept. 1, 1979; Amended by L. 1979, c. 178, § 1, et seq., effective Sept. 1, 1979). Thus, a question arises as to the current precedential value of the principle set forth in State v. McBride.
Despite the clear significance of this issue to both criminal defendants and sentencing courts, it does not appear to have ever been addressed directly. However, the existent conflict is evident. The Code "established an entirely new sentencing process. It displaced standards established under prior decisional law, created presumptive terms of imprisonment, and limited the discretionary power of sentencing courts." State v. Roth, 95 N.J. 334, 340, 471 A.2d 370 (1984). See also State v. Jarbath, 114 N.J. 394, 400, 555 A.2d 559 (1989). In sum, it favors uniform, structured, limited discretion sentencing. See State v. Baylass, 114 N.J. 169, 172, 553 A.2d 326 (1989); State v. Hartye, 105 N.J. 411, 417, 522 A.2d 418 (1987); State v. O'Connor, 105 N.J. 399, 405, 522 A.2d 423 (1987); State v. Yarbough, 100 N.J. 627, 635, 498 A.2d 1239 (1985), cert. denied, 475 U.S. 1014, 106 S.Ct. 1193, 89 L.Ed.2d 308 (1986); State v. Roth, supra, 95 N.J. at 345, 471 A.2d 370. State v. McBride, on the other hand, when dealing with youthful offenders under pre-Code law, placed a premium on, and mandated a preference for, unstructured, indeterminate term sentencing. 66 N.J. at 580, 334 A.2d 27. In light of this conflict, and in order to resolve the understandable uncertainty which surrounds this matter, we address the issue of State v. McBride's continued vitality beyond the enactment of the Code.
Since State v. McBride has never been expressly overruled, it theoretically remains good law. However, as noted above, the entire thrust of the later enacted Code is contrary to its *12 mandate regarding youthful offenders. Consequently, in seeking to discern the impact that the Code has had on the directive set forth in State v. McBride, guidance must be sought from the background and legislative history of N.J.S.A. 2C:43-5, as well as the case law interpreting this statute which has been decided subsequent to the enactment of the Code.

I.

Background and Legislative History of N.J.S.A. 2C:43-5
When the Code was enacted in 1978, N.J.S.A. 2C:43-5 was a part of it. This particular provision was derived from the source sections of N.J.S.A. 30:4-147, N.J.S.A. 30:4-148, N.J.S.A. 30:4-154 and N.J.S.A. 30:4-155[1], and it then provided:
Young adult offenders. Any person who, at the time of sentencing, is less than 26 years of age and who has been convicted of a crime may be sentenced to the reformatory as defined in R.S. 30:4-146, in the case of men, and R.S. 30:4-153, in the case of women, instead of the sentences otherwise authorized by the code. [L. 1978, c. 95, § 2C:43-5].
*13 Subsequently, in 1979, this portion of the statute was amended slightly to read:
Young adult offenders. Any person who, at the time of sentencing, is less than 26 years of age and who has been convicted of a crime may be sentenced to an indeterminate term at the Youth Correctional Institution Complex in accordance with R.S. 30:4-146 et seq. in the case of men, and to the Correctional Institution for Women, in accordance with R.S. 30:4-153 et seq., in the case of women, instead of the sentences otherwise authorized by the code. (L. 1979, c. 178, § 84].
Finally, in 1983, this provision was again amended, and it assumed its present form. As noted earlier, it now provides:
Young adult offenders. Any person who, at the time of sentencing, is less than 26 years of age and who has been convicted of a crime may be sentenced to an indeterminate term at the Youth Correctional Institution Complex, in accordance with R.S. 30:4-146 et seq., in the case of men, and to the Correctional Institution for Women, in accordance with R.S. 30:4-153 et seq., in the case of women, instead of the sentences otherwise authorized by the code. This section shall not apply to any person less than 26 years of age at the time of sentencing who qualifies for a mandatory minimum term of imprisonment without eligibility for parole, pursuant to subsection c. of N.J.S. 2C:43-6; however, notwithstanding the provisions of subsection c. of N.J.S. 2C:43-6, the mandatory minimum term may be served at the Youth Correctional Institution Complex or the Correctional Institution for Women. (L. 1983, c. 92, § 1].
Clearly, the mere fact that N.J.S.A. 2C:43-5 was included in the Code when it was enacted cannot, in and of itself, resolve the issue of State v. McBride's continued vitality. This is apparent because that fact, standing alone, can reasonably be interpreted in any number of ways. Therefore, it is imperative that we look to the legislative history of this statute.
There does not appear to be any recorded legislative history on the precise provision at issue here, N.J.S.A. 2C:43-5. Instead, there is a Statement of the Senate Judiciary Committee, dated May 15, 1978, which addresses the Code as a whole. The Committee Statement indicates that the Code was the direct result of the Legislature's desire to revise and codify New Jersey's criminal law. The significance of the sentencing revisions which took place cannot be overstated. A full seven pages of the seventeen-page Statement concern the issue of sentencing. Of particular importance in this context was the reclassification of high misdemeanors and misdemeanors into *14 first, second, third and fourth degree crimes, and non-indictable offenses into disorderly persons and petty disorderly persons offenses. Equally significant was the establishment of a sentencing structure for these newly delineated degrees of crimes.
The magnitude of the Code's revisions in this area was emphasized in a press release from the Office of the Governor, dated August 10, 1978, which accompanied Governor Byrne's signing of the bill into law. The Governor indicated that "`[t]his legislation will take us a significant step toward swift and sure punishment for crimes against persons and property.'" Regarding the particular issue of sentencing, it was noted that "[t]he Code sets down determinate sentences based on the degree of crime, rather than the present practice of sentencing to a minimum/maximum term." The Governor further stressed that "`[t]his Criminal Code is intended to make sentencing more definitive.'" He then concluded by stating that "`[i]t is designed to reduce the possibility of one judge giving a stiff sentence and another a light sentence for similar crimes.'"
It is clear from the sentencing provisions of the Code, as well as the above interpretive statements, that uniformity of sentences, through the limitation of judicial discretion in the sentencing process, was one of the primary objectives sought to be accomplished by the Code's revision of our criminal law. See N.J.S.A. 2C:1-2b. This emphasis on structured sentencing has been reiterated tirelessly by our Supreme Court following the enactment of the Code. Thus, it has been stated that the passage of the Code has served to replace the "unfettered sentencing discretion" of the pre-Code law with a "structured discretion designed to foster less arbitrary and more equal sentences." State v. Roth, supra, 95 N.J. at 345, 471 A.2d 370. Consequently, sentencing under the Code is now characterized as being "offense oriented." State v. Baylass, supra, 114 N.J. at 172, 553 A.2d 326; State v. Hodge, 95 N.J. 369, 375, 471 A.2d 389 (1984). Critical to this ultimate aim of sentencing uniformity is the channeling of judicial discretion. State v. Hartye, *15 supra, 105 N.J. at 417, 522 A.2d 418; State v. O'Connor, supra, 105 N.J. at 405-06, 522 A.2d 423; State v. Yarbough, supra, 100 N.J. at 635, 498 A.2d 1239. Therefore, even in the limited circumstances where there remains an opportunity for the exercise of judicial discretion, "it is the Code, not the judge's predilections, that controls...." State v. Baylass, supra, 114 N.J. at 172, 553 A.2d 326.
Certainly, a perpetuation of State v. McBride's mandated preference for indeterminate term sentences in the case of youthful offenders is not consistent with the Code's clearly expressed goal of determinate and definitive sentences. Thus, the survival of State v. McBride's directive beyond the enactment of the Code does not appear to be warranted by the legislative history of that statute.

II.

Case Law Concerning N.J.S.A. 2C:43-5 Which Post-Dates the Enactment of the Code
Additionally, the case law interpreting N.J.S.A. 2C:43-5, which has come down subsequent to the enactment of the Code, must be looked to for guidance on the issue of State v. McBride's continued vitality and precedential value. It should be noted that the case law concerning this precise proposition is extremely sparse. However, the little that has been written on this subject indicates that State v. McBride's directive is no longer being faithfully followed by our courts, and thus, strongly implies that its mandate did not survive the enactment of the Code.
In State v. Jarbath, supra, our Supreme Court, when addressing the issue of indeterminate term Youth Complex sentences, acknowledged that N.J.S.A. 2C:43-5 "remains available as a sentencing alternative for eligible youthful offenders." 114 N.J. at 402, 555 A.2d 559. However, the Court did not state that an indeterminate term at the Youth Complex must be favored over a prison term, and, in fact, the Court did not even *16 mention State v. McBride at all. Instead, the Court referred to an indeterminate term at the Youth Complex as being merely a "sentencing option," State v. Jarbath, supra, 114 N.J. at 401-02, 555 A.2d 559, and it went on to stress the structured and standardized nature which characterizes the "`entirely new sentencing process'" that had been established by the Code. Id. at 400-01, 555 A.2d 559 (quoting State v. Roth, supra, 95 N.J. at 340, 471 A.2d 370).
Additionally, in State v. Des Marets, 92 N.J. 62, 455 A.2d 1074 (1983), the Court recognized that there can be a conflict between the youthful offender statute and the sentencing provisions of the Code, id. at 74, 455 A.2d 1074, and when such a conflict is found to be irreconcilable, the later expression of legislative intent should ordinarily control. Id. at 76, 455 A.2d 1074. In that case, the conflict that arose involved the indeterminate term provided for under the youthful offender statute and the mandatory minimum jail sentences provided for under the Graves Act, which had been added to the Code in 1981. Id. at 74, 455 A.2d 1074. The Court acknowledged that rehabilitation was "central to this state's treatment of youthful offenders." Id. at 70, 455 A.2d 1074. It further noted that "[i]ndeterminate sentencing to a youth correctional facility, rather than to State prison, is one of the primary means by which rehabilitation is accomplished." Id. at 71, 455 A.2d 1074. However, the Court also recognized that the Graves Act approached crime from a different perspective: namely, that of "deterrence through the promise of imprisonment." Id. Finding that "deterrence is as permissible a legislative goal as rehabilitation when dealing with the problems of youthful offenders," id. at 73, 455 A.2d 1074, the Court determined that it was faced with an "inescapable conflict." Id. at 74, 455 A.2d 1074.
Looking to the unmistakable legislative policy expressed in the Graves Act, the Court concluded that it was "left no discretion to sentence youthful offenders to indeterminate terms of imprisonment. All Graves Act offenders, even those under 26 years of age, must receive the mandatory minimum *17 terms prescribed by the Act." Id. at 76, 455 A.2d 1074. Consequently, the Court impliedly repealed the portions of N.J.S.A. 2C:43-5 and N.J.S.A. 30:4-148 "to the extent that [they] conflict[ed] with the Graves Act...." Id. In support of its implied repeal, the Court instructed that "the presumption against implied repeals is overcome by a showing of irreconcilable inconsistency," and further, that "the general rule is that the later expression of legislative intent is intended to supersede prior law." Id. (Emphasis added).
In the consolidated case of State v. Appleton, which is contained within the text of State v. Des Marets, supra, the Court addressed a similar conflict between Graves Act mandatory minimum sentences and the youthful offender statute. Id. 92 N.J. at 82-84, 455 A.2d 1074. There, the Court expressly acknowledged the existence of State v. McBride's directive, and quoted it when it noted that "courts should sentence youthful offenders to a youth correctional institution `unless good and substantial reasons exist for not so doing.'" State v. Des Marets, supra, 92 N.J. at 83, 455 A.2d 1074 (quoting State v. McBride, supra, 66 N.J. at 580, 334 A.2d 27). However, since no mandatory minimum sentences were then permissible under the youthful offender statute, and the Graves Act required a mandatory minimum sentence for all offenders, the Court concluded that a youthful Graves Act offender could not be sentenced to the Youth Complex. Id. (Emphasis added).
The youthful offender statute was later amended in 1983 to allow mandatory minimum sentences to be served at the Youth Complex, thus reconciling the two provisions.[2] Nevertheless, *18 these cases clearly demonstrate that legislation subsequent to the directive set forth in State v. McBride; namely, the enactment of the Code, can serve to blunt that directive when it is deemed to be irreconcilably inconsistent with it. While the 1983 amendments to N.J.S.A. 2C:43-5 have served to reconcile the terms of the Graves Act with those of the youthful offender statute, no such reconciliation has been achieved in the context of a non-Graves Act youthful offender for whom a presumption of imprisonment arises, such as defendant in this matter. Thus, in this context, a conflict still exists. The strong legislative policy of the Code favoring structured sentencing, which has been expressly recognized in State v. Baylass, supra, 114 N.J. at 172, 553 A.2d 326; State v. Hartye, supra, 105 N.J. at 417, 522 A.2d 418; State v. O'Connor, supra, 105 N.J. at 405, 522 A.2d 423; State v. Yarbough, supra, 100 N.J. at 635, 498 A.2d 1239, and State v. Roth, supra, 95 N.J. at 345, 471 A.2d *19 370, is clearly inconsistent with State v. McBride's mandated preference for indeterminate term Youth Complex sentences in the case of youthful offenders. While the positive aspects of rehabilitation remain, it seems clear that, under the present sentencing structure of the Code, they should be available to the sentencing court as an option, but not be imposed upon the sentencing court as a mandated requirement or preference.
We adopted such a view in State v. Nunez, 209 N.J. Super. 127, 506 A.2d 1295 (App.Div. 1986). There, when evaluating the defendant's challenge to his sentence of imprisonment, based on his status as a youthful offender, we explained:
Finally, we view Nunez's sentence as unassailable. In our opinion the trial judge properly weighed the aggravating and mitigating facts in imposing sentence and, notwithstanding Nunez's age, formulated a sentence which is not so shocking as to require our intervention. State v. Roth, 95 N.J. 334, 363 [, 471 A.2d 370] (1984). Though a youthful offender may be sentenced to an indeterminate term at the Youth Reception and Correctional Center (N.J.S.A. 2C:43-5), such a matter is clearly within the court's discretion. State v. Provet, 133 N.J. Super. 432, 439 [, 337 A.2d 374] (App.Div. 1975), certif. den. 68 N.J. 174 [, 343 A.2d 462] (1975). That discretion was not abused here. [State v. Nunez, supra, 209 N.J. Super. at 133-34 [, 506 A.2d 1295]].[3]
Similarly, in State v. McKenna, 228 N.J. Super. 468, 550 A.2d 171 (App.Div. 1988), we again addressed a defendant's challenge *20 to his jail sentence which was based on, among other things, a claim that he was entitled to be sentenced to an indeterminate term at the Youth Complex. There, the trial court imposed a sentence of imprisonment with a parole ineligibility term, pursuant to a plea agreement entered into by the defendant. Id. at 470, 550 A.2d 171. In upholding the trial court's failure to sentence the defendant to an indeterminate term at the Youth Complex, we concluded that the trial court's analysis of the aggravating and mitigating factors applicable to the defendant, in addition to the serious drug offenses which he had been convicted of, provided enough of a basis for not sentencing the defendant to the Youth Complex. Id. at 476, 550 A.2d 171.
In reaching this conclusion, we candidly noted that "the Penal Code clearly establishes the severity of the crime as the most important factor to be considered by the sentencing judge." Id. at 475, 550 A.2d 171. Moreover, we declared that our review of the sentence was to be a limited one. The record was to be examined in order to determine whether the trial court had correctly applied the sentencing guidelines and weighed the aggravating and mitigating factors, which had to be supported by competent and credible evidence. Id. at 475-76, 550 A.2d 171. Finally, we emphasized that our duty was essentially just to determine if the sentencing court had "applied the correct legal principles in exercising the [limited] discretion given the trial courts." Id. at 476, 550 A.2d 171. Once again, no mention of State v. McBride was made, despite the obvious presence of a youthful offender.
Clearly, the limited number of cases which have addressed the question of State v. McBride's ongoing validity have determined that the enactment of the Code served to overshadow, if not overrule, the proposition set forth in that case. We are of the same opinion. State v. Jarbath, supra, State v. Nunez, supra, and State v. McKenna, supra, all placed strong emphasis on the Code's preference for structured sentencing, while failing to even mention State v. McBride. Moreover, State v. Des Marets, supra, which did acknowledge the directive set *21 forth in State v. McBride, declared, in virtually the same breath, that irreconcilable inconsistencies with that, or any other directive, which arise due to subsequent legislative enactments, should generally be resolved in favor of these later expressions of legislative intent. State v. Des Marets, supra, 92 N.J. at 76, 455 A.2d 1074.
In our view, the mandated preference for Youth Complex sentences in the case of youthful offenders, which was set forth in State v. McBride, did not survive the enactment of the Code. Thus, we conclude that that preference is no longer binding on sentencing courts. While the youthful offender statute unquestionably remains a viable part of the Code, and offers the benefits of rehabilitation in certain instances, its application is now merely an option, the exercise of which is reserved solely for those limited cases where the sentencing court, in its sound discretion, deems it to be appropriate. Cf. State v. Berger, 258 N.J. Super. 553, 562, 610 A.2d 892 (App.Div. 1992) (upholding the imposition of an indeterminate term sentence based on the particular facts of the case, but indicating unequivocally that the holding was not to be construed as an adoption of the position that the Code had continued the preference for indeterminate term sentencing of young adult offenders which had been established in State v. McBride).[4]
Moreover, even if we were to assume that the directive set forth in State v. McBride had survived the enactment of the Code, our recent decisions in State v. Nunez, supra, and State *22 v. McKenna, supra, instruct that the presence of a serious offense, such as first degree armed robbery, coupled with an analysis of the relevant aggravating and mitigating factors, is enough to meet State v. McBride's requirement of "good and substantial reasons," 66 N.J. at 580, 334 A.2d 27, for not giving a youthful offender a Youth Complex sentence. See State v. Nunez, supra, 209 N.J. Super. at 133-34, 506 A.2d 1295; State v. McKenna, supra, 228 N.J. Super. at 476, 550 A.2d 171. Here, defendant's sentence clearly satisfies this standard. The sentence plainly complies with the provisions of the Code, and it resulted from the trial court's thorough analysis and careful weighing of the aggravating and mitigating factors. In our view, the imposition of the presumptive fifteen year term of imprisonment for first degree armed robbery, as opposed to an indeterminate term at the Youth Complex, was legal and appropriate. It is neither manifestly excessive nor unduly punitive, and it certainly does not represent a miscarriage of justice, or shock the judicial conscience. See State v. O'Donnell, 117 N.J. 210, 215-16, 564 A.2d 1202 (1989); State v. Jarbath, supra, 114 N.J. at 401, 555 A.2d 559; State v. Ghertler, 114 N.J. 383, 387-88, 555 A.2d 553 (1989); State v. Roth, supra, 95 N.J. at 364-65, 471 A.2d 370. Consequently, we find the sentence unassailable and reject defendant's challenge to its legality and propriety.
Accordingly, the judgment of conviction and order for commitment under review are affirmed.
NOTES
[1] The Disposition of Statutes Table, which prefaces Title 2C, reveals the source sections from which the individual elements of the Code were derived. N.J.S.A. 30:4-147 and N.J.S.A. 30:4-148 are the relevant source sections in this matter, as they relate specifically to male defendants.

At the time the Code was enacted, N.J.S.A. 30:4-147 provided:
Any male person between the ages of 15 and 30 years, who has been convicted of a crime punishable by imprisonment in the State Prison, who has not previously been sentenced to a State Prison in this State, or in any other State, may be committed to the Youth Correctional Institution Complex. [L. 1970, c. 300, § 4].
Additionally, at the time the Code was enacted, N.J.S.A. 30:4-148 provided:
The courts in sentencing to the Youth Correctional Institution Complex shall not fix or limit the duration of sentence, but the time which any person shall serve in confinement or on parole shall not in any case exceed 5 years or the maximum term provided by law for the crime for which the prisoner was convicted and sentenced, if such maximum be less than 5 years; provided, however, that the court, in its discretion, for good cause shown, may impose a sentence greater than 5 years, but in no case greater than the maximum provided by law, and the commitment shall specify in every case the maximum of the sentence so imposed. The term may be terminated by the board of managers in accordance with its rules and regulations formally adopted. [L. 1970, c. 300, § 5].
[2] The complete current version of N.J.S.A. 2C:43-5 is set forth below. The 1983 amendments are represented by the underlined portion of the text.

Any person who, at the time of sentencing, is less than 26 years of age and who has been convicted of a crime may be sentenced to an indeterminate term at the Youth Correctional Institution Complex, in accordance with R.S. 30:4-146 et seq., in the case of men, and to the Correctional Institution for Women, in accordance with R.S. 30:4-153 et seq., in the case of women, instead of the sentences otherwise authorized by the code. This section shall not apply to any person less than 26 years of age at the time of sentencing who qualifies for a mandatory minimum term of imprisonment without eligibility for parole, pursuant to subsection c. of N.J.S. 2C:43-6; however, notwithstanding the provisions of subsection c. of N.J.S. 2C:43-6, the mandatory minimum term may be served at the Youth Correctional Institution Complex or the Correctional Institution for Women.
The 1983 amendments were accompanied by the following Assembly Judiciary, Law, Public Safety and Defense Committee Statement:
The purpose of this bill is to establish that adults under 26 years of age who have been convicted of committing any crime enumerated in N.J.S. 2C:43-6c. while in possession of a firearm are subject to the mandatory minimum sentences required by that statute.
According to N.J.S. 2C:43-5, persons under age 26 at the time of sentencing may be sentenced to indeterminate terms at the Youth Correctional Institution Complex or at the Correctional Institution for Women. The imposition of an indeterminate sentence precludes the imposition of a minimum term without eligibility for parole. Therefore, youthful offenders who would otherwise fall under the requirements of the mandatory sentencing law (N.J.S. 2C:43-6c.) may receive more lenient sentences.
This bill would require persons under age 26 who have committed one of the crimes enumerated in N.J.S. 2C:43-6c. while in possession of a firearm to be sentenced to a minimum term of imprisonment without eligibility for parole.
[3] The case cited for the proposition that a Youth Complex sentence is a matter clearly within the court's discretion, State v. Provet, was decided prior to the enactment of the Code, but subsequent to State v. McBride. There, we acknowledged that State v. McBride preferred a sentence to the Youth Complex for a youthful offender, but we concluded that the trial court had good reason  protecting society from a 23-year-old convicted rapist and armed robber  for imposing the jail sentence that it had chosen. State v. Provet, supra, 133 N.J. Super. at 439, 337 A.2d 374. Another pre-Code case which acknowledged that a Youth Complex sentence was merely an option for the sentencing court was State v. Spinks, 66 N.J. 568, 334 A.2d 23 (1975). State v. Spinks was decided on the same day as State v. McBride, and it upheld the prison sentence of an eighteen-year-old defendant who had been involved in four armed robberies. State v. Spinks, supra, 66 N.J. at 575, 334 A.2d 23. There, the non-availability of a mandatory minimum term at the Youth Complex was cited in support of the imposition of a prison term. State v. Spinks, supra, 66 N.J. at 575, 334 A.2d 23. However, the clear need to impress upon the defendant the seriousness of his antisocial actions, as well as the need to deter others from such conduct, were also central to the holding. Id.
[4] We note further that, even if a sentencing court determines initially that a Youth Complex sentence is not appropriate for a particular youthful offender, that court may still recommend that such an offender, who will consequently be sentenced under the Code, should be immediately evaluated for potential transfer to the Youth Complex for the purpose of allowing him to serve there the determinate sentence imposed upon him. In this manner, the youthful offender may still be afforded the opportunity to avail himself of the rehabilitative services that are offered at such a facility. See State v. Spinks, supra, 66 N.J. at 575-76, 334 A.2d 23. See also State v. Berger, supra, 258 N.J. Super. at 562 n. 6, 610 A.2d 892.