642 A.2d 1008

STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v. JAMES FERGUSON, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted March 8, 1994—Decided May 11, 1994.

488

Before Judges PRESSLER, DREIER and KLEINER.

*Wilentz, Goldman & Spitzer,* attorneys for defendant (*Barry T. Albin,* of counsel; *Mr. Albin, Eric J. Marcy,* and *Steve Manley,* on the brief and reply brief).

*Robert W. Gluck,* Middlesex County Prosecutor, attorney for plaintiff (*Simon Louis Rosenbach,* Assistant Prosecutor, of counsel and on the letter-brief).

The opinion of the court was delivered by

KLEINER, J.S.C. (temporarily assigned)

In this appeal we are required to determine the circumstances in which a court may impose a sentence upon a youthful offender, *N.J.S.A.* 2C:43–5, in excess of the mandated presumptive sentence set forth in *N.J.S.A.* 30:4–148.

Defendant James Ferguson, who was arrested at age fourteen, entered a plea of guilty at age eighteen to one count of aggravated manslaughter, *N.J.S.A.* 2C:11–4c, and was sentenced as a youthful offender, *N.J.S.A.* 2C:43–5, to an indeterminate term not to exceed eighteen years at the Youth Reception and Correction Center and a fine of $1,000. Additionally, he was given credit for time served of 700 days and was required to pay $30 to the Violent Crimes Compensation Board. Defendant appeals and we reverse.

The factual history of this matter is fully discussed in *State v. Ferguson*, 255 *N.J.Super.* 530, 605 *A.*2d 765 (App.Div.1992). We will very briefly summarize some of the salient facts. At age fourteen, defendant was charged as a juvenile, *N.J.S.A.* 2A:4A–44d(1), with knowing and purposeful murder, *N.J.S.A.* 2C:11–3a(1) or (2). The State moved to transfer jurisdiction from the Family Part to the Law Division, *R.* 5:22–2, and after a contested transfer hearing, jurisdiction was in fact waived. Defendant proceeded to trial with a jury and was convicted of knowing and purposeful murder. He was sentenced to a custodial term of thirty years without parole. On appeal, we determined that defendant had ineffective assistance of counsel at his transfer hearing and we remanded his matter for a new hearing in the Family Part to determine if defendant's case should be waived to the Law Division for trial as an adult. *State v. Ferguson, supra,* 255 *N.J.Super.* at 544, 605 *A.*2d 765. We specifically stated:

> We retain jurisdiction pending the outcome of the new waiver hearing. If the judge declines to waive the jurisdiction of the Family Court, we will relinquish all jurisdiction and the matter will proceed in the Family Court on the juvenile delinquency complaints. If the judge decides to waive jurisdiction of the Family Court, we will then entertain the appeal and review the claims of error raised at the trial resulting in defendant's conviction for murder, and any claims of error raised relevant to the new transfer hearing ordered by this remand.
>
> [*Ibid.* ]

Subsequent to our remand, defendant negotiated a plea agreement. In exchange for an agreement by the State to reduce the original charges from knowing and purposeful murder to the first degree offense of aggravated manslaughter, *N.J.S.A.* 2C:11–4c, without a recommendation as to sentence, defendant agreed to forego the new waiver hearing and agreed to submit to the jurisdiction of the Law Division, Criminal Part. He also agreed to dismiss the appeal of his conviction which was still pending despite the remand, *State v. Ferguson, supra,* 255 *N.J.Super.* at 544, 605 *A.*2d 765, and to plead guilty to one count of aggravated manslaughter, *N.J.S.A.* 2C:11–4c. On January 19, 1993, as already noted, the court sentenced defendant as a youthful offender to an indeterminate term not to exceed eighteen years at the Youth Reception and Correction Center. Defendant was also fined $1,000, was required to pay $30 to the Violent Crimes Compensation Board, and was given credit for 700 days previously served.[1]

Pursuant to *R.* 2:9–11, defendant filed an appeal limited solely to the issue of the propriety of the sentence as imposed. After oral argument, we requested full briefing on all issues respecting defendant's sentence, and specifically requested that the State and defendant address the question of the meaning of "good cause" as used in *N.J.S.A.* 30:4–148, and the relationship of that standard to the aggravating and mitigating factors defined in *N.J.S.A.* 2C:44–1a and –1b, as those factors pertain to sentencing. Pursuant to our directive, defendant now raises five points of error:

*POINT I*

THE TRIAL COURT SHOULD NOT HAVE FOUND AS AN AGGRAVATING FACTOR—"THE NATURE AND CIRCUMSTANCES OF THE OFFENSE"— BECAUSE THIS AGGRAVATING FACTOR IS NOT SUPPORTED BY REASONABLY CREDIBLE EVIDENCE, IS IN CONFLICT WITH AN EARLIER SENTENCING ON THE SAME RECORD IN WHICH THE TRIAL COURT

---

[1] Defendant was arrested on October 7, 1988. He was originally sentenced on September 6, 1990 and at that time received credit for time served of 700 days. As of June 19, 1992, defendant had served 1,564 days and the sentence imposed on that date should have been credited with 864 additional days of credit.

DID NOT FIND THIS AGGRAVATING FACTOR, AND IS INCONSISTENT WITH THE MITIGATING FACTORS FOUND BY THE TRIAL COURT.

*POINT II*

THE TRIAL COURT AT RESENTENCING SHOULD HAVE FOUND THE ADDITIONAL MITIGATING FACTOR THAT JAMES' IMPRISONMENT WOULD ENTAIL EXCESSIVE HARDSHIP FOR HIMSELF AND HIS FAMILY.

*POINT III*

THE TRIAL COURT IMPOSED A SENTENCE IN VIOLATION OF THE YOUTHFUL OFFENDER ACT BY EXCEEDING THE PRESUMPTIVE INDETERMINATE TERM NOT TO EXCEED FIVE YEARS WITHOUT A SHOWING OF "GOOD CAUSE."

*POINT IV*

THE TRIAL COURT'S APPLICATION OF THE SENTENCING GUIDELINES TO THE FACTS OF THIS CASE MAKES THE SENTENCE CLEARLY UNREASONABLE SO AS TO "SHOCK THE JUDICIAL CONSCIENCE."

A. James Should Have Been Sentenced to Probation.

B. James Should Have Been Sentenced To A Term Appropriate For A Crime One Degree Lower.

*POINT V*

THE IMPOSITION OF AN ADDITIONAL $1,000 FINE AT THE SECOND SENTENCING WAS IMPROPER.

As the third point raised by defendant is dispositive of this appeal, we will concentrate on that allegation of error, but will comment where appropriate on the other issues submitted by defendant.

■ The appellate court's power of review of sentences under the New Jersey Code of Criminal Justice, *N.J.S.A.* 2C:1–1 to 2C:98–4, was thoroughly analyzed in *State v. Roth,* 95 *N.J.* 334, 471 *A.*2d 370 (1984). The critical focus is on whether the basic sentencing determination of the lower court was "clearly mistaken." *Id.* at 364–65, 471 *A.*2d 370. As noted in *State v. Jarbath,* 114 *N.J.* 394, 401, 555 *A.*2d 559 (1989) (quoting *State v. Roth, supra,* 95 *N.J.* at 365, 471 *A.*2d 370), *Roth* dictates: "[T]he appellate courts are adjured not to exercise their own sentencing discretion or to substitute their own judgment but to determine only whether or not the sentencing court was 'clearly unreasonable.' "

■ *N.J.S.A.* 2C:43–5 allows young adult offenders to be sentenced to indeterminate terms by providing:

> Any person who, at the time of sentencing, is less than 26 years of age and who has been convicted of a crime may be sentenced to an indeterminate term at the Youth Correctional Institution Complex, in accordance with R.S. 30:4–146 et seq., in the case of men, and to the Correctional Institution for Women, in accordance with R.S. 30:4–153 et seq., in the case of women, instead of the sentences otherwise authorized by the code. This section shall not apply to any person less than 26 years of age at the time of sentencing who qualifies for a mandatory minimum term of imprisonment without eligibility for parole, pursuant to subsection c. of N.J.S. 2C:43–6; however, notwithstanding the provisions of subsection c. of N.J.S. 2C:43–6, the mandatory minimum term may be served at the Youth Correctional Institution Complex or the Correctional Institution for Women. (*L.* 1983 c. 92, § 1).

### *N.J.S.A.* 30:4–148 provides:

> The courts in sentencing pursuant to N.J.S. 2C:43–5 shall not fix or limit the duration of sentence, but the time which any person shall serve in confinement or on parole shall not in any case exceed 5 years or the maximum term provided by law for the crime for which the prisoner was convicted and sentenced, if such maximum be less than 5 years; provided, however, that the court, in its discretion, for good cause shown, may impose a sentence greater than 5 years, but in no case greater than the maximum provided by law, and the commitment shall specify in every case the maximum of the sentence so imposed.

Thus where the sentence ordinarily would exceed five years, a sentence imposed pursuant to this statute, which is indeterminate, may not exceed five years without a showing of good cause. *State v. Jarbath, supra,* 114 *N.J.* at 402, 555 *A.*2d 559; *State v. Davis,* 229 *N.J.Super.* 66, 82–83, 550 *A.*2d 1241 (App.Div.1988); *State v. Prewitt,* 127 *N.J.Super.* 560, 565, 318 *A.*2d 427 (App.Div.1974). Defendant Ferguson was therefore exposed to a sentence of five years unless good cause was shown at the time of sentence to increase the statutory presumptive sentence.

This conclusion is premised upon an analysis of several precedents. The most recent consideration of *N.J.S.A.* 2C:43–5, the Youthful Offender Statute, is *State v. Styker,* 262 *N.J.Super.* 7, 619 *A.*2d 1016 (App.Div.), *aff'd o.b.,* 134 *N.J.* 254, 633 *A.*2d 521 (1993) (Wilentz, C.J., concurring). Defendant Styker asserted in that appeal: "Where the defendant is under age 26 at the time of sentencing he is entitled to be sentenced under the Youthful Offender Act unless the court places findings on the record that he

should be sentenced as an adult offender." *Id.*, 262 *N.J.Super.* at 9, 619 *A.*2d 1016. Styker was under age twenty-six when he committed first degree armed robbery, *N.J.S.A.* 2C:15–1, and was sentenced to the presumptive term for a first degree crime, fifteen years, *N.J.S.A.* 2C:44–1f(1)(b). In rejecting Styker's argument, we concluded:

> While the youthful offender statute unquestionably remains a viable part of the Code, and offers the benefits of rehabilitation in certain instances, its application is now merely an option, the exercise of which is reserved solely for those limited cases where the sentencing court, in its sound discretion, deems it to be appropriate.
>
> [*State v. Styker, supra*, 262 *N.J.Super.* at 21, 619 *A.*2d 1016.]

Unlike Styker, defendant Ferguson was sentenced as a youthful offender after a plea of guilty to aggravated manslaughter, *N.J.S.A.* 2C:11–4c. Although crimes of the first degree generally subject a defendant to a sentencing range of ten to twenty years imprisonment, *N.J.S.A.* 2C:43–6a(1), and a presumptive term of fifteen years, *N.J.S.A.* 2C:44–1f(1)(b), aggravated manslaughter, subjects a defendant to a range of sentence between fifteen and thirty years of imprisonment and a presumptive term of twenty years, *N.J.S.A.* 2C:44–1f(1)(a), unless the court elects, as here, to utilize the youthful offender option of sentencing still available under *N.J.S.A.* 2C:43–5.

In *State v. Davis, supra*, defendant was convicted of two counts of second-degree sexual assault and two counts of endangering the welfare of a child and was sentenced pursuant to the Youthful Offender Statute, *N.J.S.A.* 2C:43–5, to two concurrent indeterminate terms not to exceed seven years. The sentencing judge there stated the reasons for imposing defendant's sentence but failed to articulate any separate statement of reasons for imposing a term greater than five years. *Davis, supra*, 229 *N.J.Super.* at 83, 550 *A.*2d 1241. After weighing the aggravating and mitigating factors, the court found them in equipoise and sentenced defendant as a youthful offender, but to a term based upon the presumptive term for a second-degree offense. *Ibid.* In reversing the trial court, the Appellate Division found that "[i]n addition to giving general

reasons for imposing the sentence, the trial judge 'should also state the reasons that constitute the 'good cause' for raising the maximum.' " *Ibid.* (quoting *State v. Prewitt, supra,* 127 *N.J.Super.* at 565, 318 *A.2d* 427). The court also noted that since the trial judge found that the mitigating and aggravating factors were in equipoise, "it would be difficult to justify an 'implicit' enunciation of good cause as the prosecutor suggests." *Ibid.* Our decision in *Davis* did not reject the concept of an 'implicit' enunciation of good cause.

■ In the year following the *Davis* decision, the Supreme Court decided *State v. Jarbath, supra,* where a defendant convicted of second-degree manslaughter was sentenced to an indeterminate term not to exceed seven years. The Court in *Jarbath, supra,* 114 *N.J.* at 402, 555 *A.2d* 559, stated:

> In this case, the court made a decision to extend the five-year maximum term, *from which it may be inferred that it had determined there was "good cause" for such an extension.* It may further be inferred that the trial court's determination that there existed "good cause" to justify the extension was based on a Code analysis involving the weighing of statutory aggravating and mitigating factors, since the court expressly referred to those factors. Because the Code's aggravating and mitigating factors are clearly probative of those elements that are most relevant to sentencing, we conclude that the court properly considered such factors in exercising its sentencing discretion under the youthful-offender statute. We thus find no mistaken exercise of discretion in the court's initial or basic approach to sentencing.
>
> [Citation omitted; emphasis added.]

Based on the foregoing principles, we conclude that a court in imposing a sentence pursuant to *N.J.S.A.* 2C:43–5 may utilize those sentencing considerations delineated in *N.J.S.A.* 2C:44–1 as a basis to explain its sentence. Where the court articulates the reasons for its sentence utilizing only *N.J.S.A.* 2C:44–1a and –1b, the factors considered may serve as an inferred articulation of "good cause" for increasing the presumptive term beyond five years, *N.J.S.A.* 30:4–148. In *State v. Davis, supra,* 229 *N.J.Super.* at 83, 550 *A.2d* 1241, we were unable to infer any reason for the increase over the presumptive term for a youthful offender as the aggravating and mitigating factors were in equipoise. In *State v.*

*Jarbath,* the sentencing reasons were not in equipoise. The trial court found that the aggravating factors still outweighed the mitigating factors, *Jarbath, supra,* 114 *N.J.* at 402, 555 *A.*2d 559, which permitted the Supreme Court to imply the "good cause" mandated by *N.J.S.A.* 30:4–148.

We conclude that the standard "good cause" required to increase the maximum sentence of a youthful offender is met by an articulation of "aggravating factors which preponderate over mitigating factors." As noted in *State v. Roth, supra,* 95 *N.J.* at 359, 471 *A.*2d 370:

> Having determined that imprisonment is mandated, the trial judge must impose the appropriate sentence found in *N.J.S.A.* 2C:44–1(f)(1). Again, this "presumption" leaves the court the discretion to adjust the sentence, but only within certain strictures. For each degree of crime the Code establishes ordinary sentences within the maximum and minimum range found in 2C:43–6(a). The court undertakes an examination and weighing of the aggravating and mitigating factors listed in 2C:44–1(a) and (b). If, on balance, there is a preponderance of aggravating factors, the court may impose sentence up to the maximum for the degree of the offense as provided in 2C:43–6(a); if a preponderance of mitigating factors, it may sentence down to the statutory minimum.
>
> [Footnote omitted.]

In reviewing the case *sub judice,* we find that when defendant was originally sentenced on September 6, 1990, the trial judge found applicable only one aggravating factor, "[t]he need for deterring the defendant and others from violating the law." *N.J.S.A.* 2C:44–1a(9). The court analyzed the mitigating factors and determined the following were applicable: "[t]here were substantial grounds tending to excuse or justify the defendant's conduct, though failing to establish a defense," *N.J.S.A.* 2C:44–1b(4); "[t]he victim of the defendant's conduct induced or facilitated its commission," *N.J.S.A.* 2C:44–1b(5); "[t]he defendant has no history of prior delinquency or criminal activity or has led a law-abiding life for a substantial period of time before the commission of the present offense," *N.J.S.A.* 2C:44–1b(7), "[t]he defendant's conduct was the result of circumstances unlikely to recur," *N.J.S.A.* 2C:44–1b(8); "[t]he character and attitude of the defendant indicate that he is unlikely to commit another offense,"

*N.J.S.A.* 2C:44–1b(9); "[t]he defendant is particularly likely to respond affirmatively to probationary treatment," *N.J.S.A.* 2C:44–1b(10). Notwithstanding that the mitigating factors outweighed the aggravating factors, the court imposed the presumptive sentence of thirty years imprisonment.

After defendant's original conviction on June 13, 1990, he was transferred to the Juvenile Medium Security Facility in Bordentown. While incarcerated, defendant earned his general education diploma and earned twelve transferrable college credits.

At the time of his sentencing for aggravated manslaughter on January 19, 1993, the court received significant information regarding defendant's character and rehabilitation. Included was a letter from Joseph Cuttre, Superintendent of the Bordentown facility, who after praising defendant's character and work at the facility, stated:

> The staff here believes, based upon impressions gained from daily interactions with James and ongoing monitoring of his behavior, that he shows more potential to be a law-abiding, productive member of society than perhaps any youth they have worked with. The staff here has a strong concern about whether further incarceration will be counterproductive to the rehabilitative process James has shown in this facility.

Edmond C. Cicchi, Superintendent of the Middlesex County Youth Center, also lauded defendant, stating:

> I have never seen a child who deserves a second chance at life the way I feel James does. I know his crime was severe and no one can ever bring back the young man who was killed, but I feel that, given the opportunity, James will lead a productive life that, someday will benefit our society.

Thomas F. Lynch, then Assistant Commissioner, Division of Juvenile Services in the Department of Corrections, interviewed defendant in August 1990 and stated, "I cannot recall another juvenile offender who had the potential for being rehabilitated that James does in my over 20 years with the Department of Corrections." [2] Other letters submitted to the same effect included those

---

[2] This letter had also been submitted to the court when defendant was sentenced originally. Because of its significance, the letter was again submitted at defendant's sentencing for aggravated manslaughter.

from senior detention officers at the Middlesex facility. Also before the sentencing court was a comprehensive report urging leniency, prepared at the request of the Public Defender by Paul DeMuro, a "nationally recognized expert on juvenile offenders." Nothing in the record which was before the sentencing court disputes the fact that defendant was a model inmate as of the date of sentencing. Additionally, defendant submitted several expert evaluations stressing his amenability to rehabilitation or his actual rehabilitation during incarceration.

At his January 19, 1993 sentencing, the trial court again utilized the statutory considerations enumerated in *N.J.S.A.* 2C:44–1a and –1b. The court concluded that *N.J.S.A.* 2C:44–1a(9) was still applicable but added as an appropriate consideration *N.J.S.A.* 2C:44–1a(1), "[t]he nature and circumstances of the offense, and the role of the actor therein, including whether or not it was committed in an especially heinous, cruel, or depraved manner."[3] The court found that the six mitigating factors deemed applicable at the original sentencing proceeding on September 6, 1990 were still appropriate sentencing considerations. The court concluded that the mitigating factors outweighed the aggravating factors, justifying a reduction in sentence from the presumptive term of twenty years. Based on that conclusion, the court reduced the maximum term to eighteen years, though the court posited the sentence as "not to exceed eighteen years," as required by *N.J.S.A.* 30:4–148.

We conclude that the sentence imposed violates the mandate of *N.J.S.A.* 2C:43–5 when read in conjunction with *N.J.S.A.* 30:4–148. The court was permitted in its discretion to utilize the sentencing option permitted by *N.J.S.A.* 2C:43–5 provided the maximum term did not exceed five years. *N.J.S.A.* 30:4–148. For good cause

---

[3] Defendant contends that it was error to consider *N.J.S.A.* 2C:44–1a(1) and also contends that if the court increased the aggravating factors, it should have increased the mitigating factors by including *N.J.S.A.* 2C:44–1b(11), "[t]he imprisonment of the defendant would entail excessive hardship to himself or his dependents." We need not consider those arguments.

shown, or upon a finding that aggravating considerations preponderated over mitigating considerations, and no other good cause having been articulated, it could have increased the maximum term at the Youth Correctional Facility. *Id.* Having concluded that the mitigating considerations in this case outweighed the aggravating considerations, the court was foreclosed from increasing the presumptive term beyond five years. *Id.; see also State v. Roth, supra,* 95 *N.J.* at 359, 471 *A.*2d 370.

In reviewing this sentence, we also conclude that it was error to impose a fine of $1,000. We do not agree with defendant's argument that the fine was impermissible in that it renders his sentence for aggravated manslaughter more severe after his original appeal from his sentence for murder. A more severe sentence upon a defendant's reconviction after a successful appeal is not automatically prohibited. *North Carolina v. Pearce,* 395 *U.S.* 711, 723, 89 *S.Ct.* 2072, 2079, 23 *L.Ed.*2d 656, 668 (1969). Due process of law requires that vindictiveness against a defendant who is successful on an appeal play no part in his or her new sentence. *Id.* at 725, 89 *S.Ct.* at 2080, 23 *L.Ed.*2d at 669.

[W]henever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding.

[*Id.* at 726, 89 *S.Ct.* at 2081, 23 *L.Ed.*2d at 670.]

The New Jersey courts are in accord. *State v. Rodriguez,* 97 *N.J.* 263, 276, 478 *A.*2d 408 (1984) (if original sentence is increased, court must affirmatively identify the relevant conduct or events that occurred after the original sentencing proceeding in order to overcome any presumption of vindictiveness); *State v. Lozada,* 257 *N.J.Super.* 260, 277–78, 608 *A.*2d 407 (App.Div.), *certif. denied,* 130 *N.J.* 595, 617 *A.*2d 1218 (1992). However, defendant was sentenced on January 19, 1993 for aggravated manslaughter and the sentencing court was not bound by his prior sentence for knowing and purposeful murder.

When sentencing a defendant to a term of imprisonment, a court may also require payment of a fine. *N.J.S.A.* 2C:43–2b(4);

*State v. Newman,* 132 *N.J.* 159, 164, 623 *A.*2d 1355 (1993). *N.J.S.A.* 2C:44–2, governing the criteria to be used in the imposition of fines, provides in part:

   a. The court may sentence a defendant to pay a fine in addition to a sentence of imprisonment or probation if:

   (1) The defendant has derived a pecuniary gain from the offense; or the court is of opinion that a fine is specially adapted to deterrence of the type of offense involved or to the correction of the offender;

   (2) The defendant is able, or given a fair opportunity to do so, will be able to pay the fine; and

   (3) The fine will not prevent the defendant from making restitution to the victim of the offense.

   . . . .

   c. (1) In determining the amount and method of payment of a fine, the court shall take into account the financial resources of the defendant and the nature of the burden that its payment will impose.

■ The court is required to state on the record the reasons for imposing the sentence, "including [its] findings pursuant to the criteria for withholding or imposing imprisonment or fines under *N.J.S.A.* 2C:44–1 to 2C:44–3 . . . ." *R.* 3:21–4(f); *State v. Pindale,* 249 *N.J.Super.* 266, 289, 592 *A.*2d 300 (App.Div.1991) (findings requirement of *R.* 3:21–4(f) applies to the imposition of monetary penalties); *see also State v. Newman, supra,* 132 *N.J.* at 170, 623 *A.*2d 1355; *State v. Harris,* 70 *N.J.* 586, 599, 362 *A.*2d 32 (1976) (requirement of statement of reasons extends to imposition of restitution).

■ In this case, the trial judge did not explain his reason for imposing a fine. The imposition of the fine is indeed surprising by the non-inclusion of a fine as a component of defendant's original sentence of thirty years. Furthermore, the court failed to adhere to *N.J.S.A.* 2C:44–2c(1) and did not articulate any consideration of defendant's ability to pay the fine or the burden that payment might have upon him. Additionally, the court failed to give defendant the opportunity to be heard respecting his ability to pay the fine or to be heard as to the manner or method of payment. *State v. Newman, supra,* 132 *N.J.* at 178–79, 623 *A.*2d 1355; *State v. De Bonis,* 58 *N.J.* 182, 199–200, 276 *A.*2d 137 (1971) (formulat-

ing guidelines with respect to imposition of fines on indigents and recommending opportunity of installment payments). The court therefore erred in its imposition of the $1,000 fine.

*State v. Roth, supra,* 95 *N.J.* at 364–65, 471 *A.*2d 370, discusses an appellate court's role in reviewing a sentence:

It can (a) review sentences to determine if the legislative policies, here the sentencing guidelines, were violated; (b) review the aggravating and mitigating factors found below to determine whether those factors were based upon competent credible evidence in the record; and (c) determine whether, even though the court sentenced in accordance with the guidelines, nevertheless the application of the guidelines to the facts of this case makes the sentence clearly unreasonable so as to shock the judicial conscience.

We must avoid the substitution of appellate judgment for trial court judgment. What we seek by our review is not a difference in judgment, but only a judgment that reasonable people may not reasonably make on the basis of the evidence presented:

[T]he error which warrants modification of a sentence must amount to more than a difference of opinion or individual sentencing philosophy. The sentencing objectives are spelled out in the Code. It is deviation from those objectives, in view of the standards and criteria therein set forth, which constitutes error. To hold otherwise would allow for ad hoc, instinctive decisions on appeal which could result in merely perpetuating disparity on a different level and which would certainly thwart the development of defined, objective standards. [*People v. Cox,* 77 *Ill.App.*3d 59, 65, 32 *Ill.Dec.* 946, 952 (396 *N.E.*2d 59, 65 (App.Ct.1979), rev'd due to conflict between statute and court rule, 82 *Ill.*2d 268, 45 *Ill.Dec.* 190, 412 *N.E.*2d 541 (Sup.Ct.1980).]

We have previously concluded that "[a] remand is unnecessary where the question presented is totally based on 'a paper record which the appellate courts are as equipped to evaluate as the sentencing court.'" *State v. Towey,* 244 *N.J.Super.* 582, 594, 583 *A.*2d 352 (App.Div.) (quoting *Jarbath, supra,* 114 *N.J.* at 412 n. 4, 555 *A.*2d 559), *certif. denied,* 122 *N.J.* 159, 584 *A.*2d 226 (1990). The entire record which was before the court at defendant's resentencing is now before this court.

Defendant has now been incarcerated since his arrest on October 7, 1988, at age fourteen. He has served in excess of five years, the maximum term permitted as a youthful offender in the absence of a showing of good cause. *N.J.S.A.* 30:4–148. We elect to exercise our original sentencing jurisdiction, *N.J.S.A.* 2C:44–7, rather than remand to the trial court for resentencing. *R.* 2:10–5.

Accordingly, the judgment of conviction is reversed and the proceedings are remanded to the Law Division for an immediate entry of a judgment sentencing defendant to an indeterminate term at the Youth Correctional Institution for a period not exceeding five years. Defendant shall receive credit for all time served since October 7, 1988. The fine of $1,000 is hereby vacated. Defendant shall pay $30 to the Violent Crimes Compensation Board.