**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2754-15T2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

GILBERTO VILLANUEVA, a/k/a
GILBERTO VILLANUEVA, JR.,
GILBERT VILLANUEVA, and
GILBERTO VELLANUERA,

    Defendant-Appellant.

_____

          Argued May 15, 2018 — Decided July 17, 2018

          Before Judges Reisner, Hoffman and Mayer.

          On appeal from Superior Court of New Jersey,
          Law Division, Camden County, Indictment No.
          14-08-2601.

          Marcia Blum, Assistant Deputy Public Defender,
          argued the cause for appellant (Joseph E.
          Krakora, Public Defender, attorney; Marcia
          Blum, of counsel and on the brief).

          Arielle E. Katz, Deputy Attorney General,
          argued the cause for respondent (Gurbir S.
          Grewal, Attorney General, attorney; Arielle E.
          Katz, of counsel and on the brief).

          Appellant filed a pro se supplemental brief.

PER CURIAM

In 2014, a grand jury charged defendant Gilberto Villanueva with: (1) first-degree murder, N.J.S.A. 2C:11-3(a)(1) or (2) (count one); (2) first-degree felony murder, N.J.S.A. 2C:11-3(a)(3) (count two); (3) second-degree burglary, N.J.S.A. 2C:18-2(a)(1) (count three); (4) first-degree criminal attempt/murder, N.J.S.A. 2C:5-1 and N.J.S.A. 2C:11-3(a)(1) or (2) (count four); (5) third-degree possession of a weapon for unlawful purpose, N.J.S.A. 2C:39-4(d) (count five); and (6) fourth-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(d) (count six). During pretrial proceedings, the trial court denied defendant's motion to exclude statements he made to police during interrogation. The court further granted the State's motion to admit text messages defendant sent to his ex-girlfriend, K.D. (Karen),[1] and evidence of a domestic violence incident involving the couple.

Following a six-day trial, a jury found defendant guilty on all counts. The judge sentenced defendant to an aggregate sixty years in prison, subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. The judge also ordered defendant to pay restitution of $8910. For the reasons that follow, we affirm

---

[1] We use the victims' initials to protect their privacy. In addition, for ease of reference, we refer to each victim by a pseudonym.

defendant's judgment of conviction, except for the provision regarding restitution, which we vacate and remand for a restitution hearing.

I

We derive the following facts from the trial testimony. On October 27, 2013, Karen and defendant, her boyfriend at the time, had an argument that ended with defendant hitting Karen in the face. Defendant told Karen "he was the devil," and threatened he "would hurt [Karen] and [her] family." Karen called the police, and the police charged defendant with simple assault, criminal mischief, and obstructing justice. Defendant pled guilty to at least simple assault.[2]

The following day, defendant told Karen he had been drunk the night before, and accidentally hit her. Karen ended the relationship, but the two continued to exchange text messages. Eventually, the text messages became threatening, and Karen feared for her family's safety.

On November 13, 2013, defendant texted Karen, requesting to sleep at her home. Karen repeatedly told defendant she did not

---

[2] Defendant's brief indicates he pled guilty only to simple assault; however, at the N.J.R.E. 404(b) hearing, the motion judge stated defendant pled guilty to all three charges and defense counsel did not challenge this statement.

wish to see him.  Defendant also called Karen four times, but she did not respond.

Around 9:00 p.m. that same day, Karen and her mother, S.D. (Sara), went upstairs to put Karen's daughter and nephew to bed. Around 10:30 p.m., defendant entered Karen's bedroom with a screwdriver.  Karen ordered defendant to leave.  Defendant initially ignored her command, but eventually dropped the screwdriver.

Sara entered Karen's bedroom, and also demanded defendant leave.  Sara then told Karen to remain upstairs while she escorted defendant to the front door.  Karen ran downstairs when she heard her mother scream.  She saw defendant's hand thrusting towards her mother, and "[i]t appeared as if he was punching her."  Karen tried to intervene, but when defendant turned around, she saw he had "a bloody knife in his hand."  Karen further testified,

> when I pushed him, he stabbed me twice in my hip.  I fell onto my knees.  He stabbed me twice in my back.  And when I tried to get up, he went to stab me in my heart, but I put my arm up in defense and the blade went into my forearm.  And I tried to scramble up to catch my balance and I looked over and my mom was laid out on the floor completely unconscious at this point.

Subsequently, defendant asked Karen for her car keys, and she lied, telling him the keys were in the living room. When defendant went to get the keys, Karen escaped and ran towards her neighbor's

4

house.  Defendant ran after Karen, but fled when she began screaming.  The neighbor then called the police.

First responders transported Sara to Cooper Hospital, where she died at 11:21 p.m.  Karen went to the same hospital, where she received treatment for stab wounds to her neck (near her carotid artery), collar bone, both sides of her abdomen, and defensive wounds on her arms.

Merchantville police officer, Sergeant Greg Miller went to the crime scene at 10:34 p.m.  While there, he received a report that the Camden City police had a suspect — later identified as defendant — in custody at Lady of Lourdes Hospital.  Defendant had a knife wound in his hand.

Sergeant Miller arrived at the hospital around midnight, November 14, 2013, and took custody of defendant.  At that point, defendant was sleeping and handcuffed to a gurney.  Around 5:30-6:00 a.m., defendant woke up, and a doctor stitched his hand.  At some point during defendant's stay at the hospital, staff gave him Ativan and Haldol because he was "combative."

Around 6:00 a.m., Sergeant Miller transported defendant to the Camden County Prosecutor's office for processing.  Upon leaving the hospital, defendant could walk on his own, and neither stumbled nor leaned on anyone for support.  Sergeant Miller further testified, based upon his experience with "hundreds" of

intoxicated individuals, that defendant appeared oriented, alert, and not intoxicated.

Also on November 14, 2013, a neighbor of the victims found a knife and believed it may have been involved in the homicide; the neighbor called police who retrieved the knife. A lab technician found both defendant's and Karen's DNA on the knife.

That same day, a medical examiner performed an autopsy on Sara. He noted she had "seven stab and incise wounds." One stab wound was around four inches deep and struck Sara's lung and aorta. He opined this caused massive bleeding and rapid death. Sara also had a stab wound to her stomach, which he believed could also have caused death, either from bleeding or infection. The medical examiner further opined Sara died from the stab wound to her aorta, and no other preexisting injuries or disease contributed to her death.

On November 14, 2013, at around 2:00 a.m., defendant's sister Nancy provided a statement to the police, which the judge permitted the State to play for the jury. In her statement, Nancy told police her brother called her on the night of the homicide. He stated "he was hurt," "bleeding," "dying," and "wanted to die." When Nancy found defendant, he was bleeding, and told her that he "and [Karen] got in a sword fight." He also said "something about stabbing [Karen and her mom] in the lung." Nancy explained

defendant "was drunk" and he "drinks a lot, a lot, a lot." Nancy took defendant to the hospital, where police ultimately apprehended him.

Detective Peter Longo, who interrogated defendant, testified at the pretrial suppression hearing. He stated that at the interrogation, defendant appeared "tired," "evasive," and "cautious." He further testified he read defendant his Miranda[3] warnings and defendant signed the Miranda form. The detective stated defendant did not appear intoxicated or under the influence of drugs during the interrogation, and defendant was able to maintain a coherent conversation. However, he also acknowledged that during the interrogation, he had to ask defendant to stay awake, sit up, and repeat himself.

On appeal, defendant argues:

POINT I

THE ADMISSION OF THE INTERROGATION VIOLATED DEFENDANT'S STATE AND FEDERAL CONSTITUTIONAL RIGHTS TO REMAIN SILENT. THE DRUGS HE WAS GIVEN AT THE HOSPITAL SHORTLY BEFORE THE INTERROGATION, COMBINED WITH THE EFFECTS OF HIS DAY-LONG DRINKING, HIS INJURY, AND HIS EXTREME FATIGUE[,] RENDERED HIM UNABLE TO WAIVE HIS RIGHTS KNOWINGLY, INTELLIGENTLY, AND VOLUNTARILY.

---

[3] Miranda v. Arizona, 384 U.S. 436 (1966).

POINT II

THE ADMISSION OF THE OCTOBER 27[, 2013] INCIDENT VIOLATED DEFENDANT'S CONSTITUTIONAL RIGHTS TO DUE PROCESS AND A FAIR TRIAL AND N.J.R.E. 404(b).

POINT III

THE SENTENCE IMPOSED ON THE MURDER — [FORTY-FIVE] YEARS, [THIRTY-EIGHT] YEARS AND THREE MONTHS WITHOUT PAROLE — IS EXCESSIVE.

POINT IV

THE IMPOSITION OF RESTITUTION VIOLATED DEFENDANT'S SIXTH AMENDMENT RIGHT TO TRIAL BY JURY.

POINT V

THE IMPOSITION OF $[8910] IN RESTITUTION WITHOUT A HEARING VIOLATED DEFENDANT'S RIGHTS TO DUE PROCESS AND N.J.S.A. 2C:44-2.

In his pro se brief, defendant argues:

POINT I

APPELLA[NT] WILL ARGUE PROSECUTOR[IAL] MISCONDUCT WHEN THE STATE VOUCHED FOR THE CREDIBILITY OF . . . [KAREN] . . . TO THE JURY DURING THE PROSECUTOR'S CLOSING SUMMATION. (In Addition, Prosecutorial Misconduct for Cumulatively Alleging the defendant broke in with a screwdriver knowing that defendant was paying rent to live at that residence).

II

We first address defendant's contention that the trial court erred in admitting his interrogation statements because the State failed to prove beyond a reasonable doubt that he knowingly,

intelligently, and voluntarily waived his <u>Miranda</u> rights. Specifically, defendant argues, "at the time of the interrogation, he was in the midst of sleeping off a heavy bout of drinking and was in pain from his injured hand . . . . [and] he was given two drugs at the hospital, Ativan and Haldol, both of which induce sleep." He alleges these factors impaired his cognition, thereby eliminating his ability to effectively waive his <u>Miranda</u> rights.

We "engage in a 'searching and critical' review of the record to ensure protection of a defendant's constitutional rights" when assessing the propriety of a trial court's decision to admit a police-obtained statement. <u>State v. Hreha</u>, 217 N.J. 368, 381-82 (2014) (quoting <u>State v. Pickles</u>, 46 N.J. 542, 577 (1966)). Nonetheless, we defer to the trial court's credibility and factual findings because of the trial court's ability to see and hear the witnesses, and thereby obtain the intangible but crucial feel of the case. <u>State v. Maltese</u>, 222 N.J. 525, 543 (2015). To warrant reversal, a defendant must show that the admission of the statement was error "capable of producing an unjust result." <u>Ibid.</u>

"A suspect's waiver of his [or her] Fifth Amendment right to silence is valid only if made 'voluntarily, knowingly and intelligently.'" <u>State v. Adams</u>, 127 N.J. 438, 447 (1992) (quoting <u>Miranda</u>, 384 U.S. at 444). The State bears the burden of establishing beyond a reasonable doubt that a confession is knowing

and voluntary. N.J.R.E. 104(c); State v. Nyhammer, 197 N.J. 383, 401 n.9 (2009). The determination of the voluntariness of a custodial statement requires an assessment of the totality of the circumstances surrounding the giving of the statement. State v. Roach, 146 N.J. 208, 227 (1996).

Contrary to defendant's assertion, his alleged intoxication does not automatically dictate that he cannot knowingly or intelligently waive his Miranda rights. See State v. Warmbrun, 277 N.J. Super. 51, 61-62, 64 (App. Div. 1994) (holding defendant knowingly and voluntarily waived his Miranda rights despite his intoxication). Rather, in applying the totality of the circumstances test, the court must consider whether the defendant spoke freely and with understanding, was able to correctly provide pedigree information, and was capable of narrating the past events and his or her participation in them. Id. at 62, 64; State v. Bindhammer, 44 N.J. 372, 383-84 (1965).

Here, the judge thoroughly considered the totality of the circumstances, including defendant's prior history with law enforcement, his ability to coherently converse with Detective Longo, and Detective Longo's testimony that defendant did not appear intoxicated. Defendant remained capable of conversing and lacked indicia of intoxication despite receiving two drugs before the interrogation and his alleged hangover. Moreover, as the

judge noted, Detective Longo found defendant engaged, inquisitive, and "animated" during the interrogation. Accordingly, the record supports the judge's findings, and we affirm on this issue.

## III

Defendant next argues the trial court erred in admitting evidence of the October 27, 2013 domestic violence incident. We disagree.

N.J.R.E. 404(b) provides that evidence of one's prior crimes or bad acts is inadmissible character evidence unless permitted under N.J.R.E. 608(b) or, if it is proffered for a non-propensity purpose, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident when such matters are relevant to a material issue in dispute." In State v. Cofield, our Supreme Court set forth the following four-pronged test to govern the admission of such evidence:

1. The evidence of the other crime must be admissible as relevant to a material issue;

2. It must be similar in kind and reasonably close in time to the offense charged;

3. The evidence of the other crime must be clear and convincing; and

4. The probative value of the evidence must not be outweighed by its apparent prejudice.

11

[127 N.J. 328, 338 (1992) (citation omitted).]

We give "great deference" to a trial judge's determination on the admissibility of "other bad conduct" evidence. <u>State v. Goodman</u>, 415 N.J. Super. 210, 228 (App. Div. 2010) (citation omitted). We apply an abuse of discretion standard, and require a "clear error of judgment" to overturn the trial court's determination. <u>State v. Castagna</u>, 400 N.J. Super. 164, 182-83 (App. Div. 2008).

In the instant matter, the trial judge did not abuse his discretion in admitting evidence of the domestic violence incident. He appropriately determined the circumstances of defendant's simple assault conviction were "highly relevant as they go to the [S]tate's ability to show motive, intent, the absence of mistake or accident, and perhaps . . . even a plan." Additionally, he held the risk of prejudice "does not substantially outweigh the probative nature of the evidence favoring admissibility" because the risk could be "adequately addressed through the use of a limiting instruction."

The judge appropriately found defendant's prior assault — and his statements that he was "the devil" and would hurt Karen and her family — were probative of defendant's motive, intent, absence of mistake, and, potentially, plan. Particularly, these statements — which were made less than three weeks before the

night in question — were necessary in demonstrating the State's theory that defendant intentionally and knowingly murdered Sara and attempted to murder Karen. See, e.g., State v. Erazo, 126 N.J. 112, 131 (1991) (holding the defendant's prior statements necessary because they demonstrated his mental state at the time of the killing).

Moreover, the judge provided the jury a limiting instruction to curtail any unfair prejudice to defendant. That the judge provided that limiting instruction during the final jury charge, as opposed to at the time of Karen's testimony, is not clearly capable of producing an unjust result. See R. 2:10-2. Accordingly, the record fails to reflect any prejudicial error, and we affirm on this issue.

IV

Defendant next argues the trial court incorrectly applied aggravating factor two under N.J.S.A. 2C:44-1(a), resulting in an excessive sentence. He contends the medical examiner testified Sara died of one wound — her "sliced" aorta — and the stab wound to her stomach would only have caused death had it been left untreated and become infected. Moreover, defendant asserts that, contrary to the trial judge's assertion, Sara was not "substantially incapable of exercising normal or physical

resistance."  See N.J.S.A. 2C:44-1(a)(2).  Defendant's arguments lack persuasion.

"The critical focus of the appellate power to review and correct sentences is on whether the basic sentencing determination of the lower court was clearly mistaken."  State v. Jarbath, 114 N.J. 394, 401 (1989) (internal quotation marks and citation omitted).  Under N.J.S.A. 2C:44-1(a)(2), a court must consider

> [t]he gravity and seriousness of harm inflicted on the victim, including whether or not the defendant knew or reasonably should have known that the victim of the offense was particularly vulnerable or incapable of resistance due to advanced age, ill-health, or extreme youth, or was for any other reason substantially incapable of exercising normal physical or mental power of resistance.

Defendant stabbed Sara seven times, injuring her lung, aorta, abdomen, hip, thigh, as well as causing defensive wounds across her arms.  The injury to her aorta alone would have caused Sara's death; however, defendant continued to stab her numerous other times.  Those facts demonstrate the gravity of the harm defendant caused.  Moreover, as the trial judge found, defendant was significantly younger and larger, both in height and weight, than Sara.  In fact, the judge noted, defendant "is not a small man. The pre-sentence report would indicate he is five-seven and weighs 242 pounds.  At the time of the offense, he was in his mid-twenties. . . . [In contrast, Sara] stood at five three, was fifty

years of age" and had recently "lost a substantial amount of weight." Therefore, the record supports the judge's findings, and the judge did not abuse his discretion in applying aggravating factor two. We affirm the sixty-year NERA sentence.

V

Defendant next argues the trial judge ordered him to pay restitution to the victims without making adequate factual findings. We agree.

A "court shall sentence a defendant to pay restitution in addition to a sentence of imprisonment" if: "(1) [T]he victim, or in the case of a homicide, the nearest relative of the victim, suffered a loss; and (2) [T]he defendant is able to pay or, given a fair opportunity, will be able to pay restitution." N.J.S.A. 2C:44-2(b). The amount of restitution may not exceed the victim's loss. N.J.S.A. 2C:43-3; State v. Newman, 132 N.J. 159, 167 (1993).

Before a court imposes restitution, it must make the required findings under N.J.S.A. 2C:44-2(b), and it must place those findings and reasons on the record. State v. Ferguson, 273 N.J. Super. 486, 499 (App. Div. 1994). A hearing is generally required unless there is no dispute as to the amount necessary to make the victim whole or the defendant's ability to pay. State v. McLaughlin, 310 N.J. Super. 242, 263-65 (App. Div. 1998); State v. Orji, 277 N.J. Super. 582, 589-90 (App. Div. 1994).

Here, the trial judge declined to hold a hearing regarding restitution. He relied on representations from the Victims of Crime Compensation Office (VCCO) in making his determination that defendant owed $6510 in restitution to satisfy expenses related to Sara's death and $2400 relative to Karen's injuries.

Importantly, however, the trial judge failed to consider defendant's ability to pay the restitution award. In fact, he explicitly stated: "The Court, certainly, questions ultimately . . . defendant's ability to make that payment; nonetheless, that's imposed." As such, the trial judge failed to make a determination that "defendant is able to pay or, given a fair opportunity, will be able to pay restitution." N.J.S.A. 2C:44-2(b)(2); see e.g., State v. Pessolano, 343 N.J. Super. 464, 479 (App. Div. 2001) (remanding for a restitution hearing because "the judge held no hearing and made no comments during sentencing about defendant's financial status or ability to pay"); State v. Scribner, 298 N.J. Super. 366, 372 (App. Div. 1997) ("In order to impose restitution, a factual basis must exist and there must be an explicit consideration of defendant's ability to pay."). Therefore, because the trial judge failed to consider defendant's ability to pay, we remand for a restitution hearing.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2754-15T2

VI

Finally, in his pro se brief, defendant argues the "prosecutor committed misconduct when she openly vouched for the credibility of [Karen]" during summation. He further contends the prosecutor perjured herself, and was biased "because she was a female representing two female victims." Defendant's arguments lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

The judgment of conviction is affirmed except as to the restitution ordered, and the matter is remanded for a restitution hearing.

Affirmed in part, and vacated and remanded in part.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2754-15T2