# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0434-17T4

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

GERALD B. WILSON,

      Defendant-Appellant.

_____

> Submitted December 17, 2019 – Decided January 30, 2020
>
> Before Judges Yannotti, Currier and Firko.
>
> On appeal from the Superior Court of New Jersey, Law Division, Cumberland County, Indictment No. 13-05-0452.
>
> Joseph E. Krakora, Public Defender, attorney for appellant (Cody Tyler Mason, Assistant Deputy Public Defender, of counsel and on the briefs).
>
> Jennifer Webb-McRae, Cumberland County Prosecutor, attorney for respondent (Stephen Christopher Sayer, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Gerald Wilson appeals from his convictions for first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(2)(c) (count one); second-degree child endangerment, N.J.S.A. 2C:24-4(a) (count two); two counts of third-degree witness tampering, N.J.S.A. 2C:28-5(a)(1) (counts three and four); two counts of third-degree terroristic threats, N.J.S.A. 2C:12-3(b) (counts five and six); second-degree sexual assault, N.J.S.A. 2C:14-2(c)(1) (count seven); third-degree criminal restraint, N.J.S.A. 2C:13-2(a) (count eight); and second-degree kidnapping, N.J.S.A. 2C:13-1(b) (count nine). We affirm the convictions but reverse the imposition of the $30 per month Sex Offender Supervision Fund (SOSF) penalty, which was improperly assessed. We also remand and direct the judge to conduct a hearing on defendant's ability to pay restitution to the Victims of Crime Compensation Office (VCCO) and on the penalty for the Sex Crimes Victim Treatment Fund (SCVTF), and to amend the judgment of conviction (JOC).

## I.

We discern the following facts from the evidence adduced at trial. Defendant was married to C.M.[1] in 2008. C.M. has two daughters from a prior relationship, J.P., a minor, and M.P., an older daughter who did not live with the

---

[1] We use initials to identify C.M. and others involved. See R. 1:38-3(c)(9).

couple, and a minor son, O.P. After marrying defendant, C.M. and her two minor children moved in with defendant. He began sexually abusing J.P. almost immediately. C.M. and her children are undocumented immigrants from Mexico.

The morning of November 10, 2009, defendant and C.M. left their home for work while J.P. and O.P. were still asleep. Approximately twenty minutes later, C.M. returned home because she forgot something. Upon her arrival, C.M. found defendant standing partially undressed with J.P. on the bed in her underwear. C.M. accused defendant of sexually abusing her daughter.

Later that day, J.P. told her mother that defendant had been sexually assaulting her for a year and a half and repeatedly forced her to have oral and vaginal sex with him. J.P. also reported to her mother that when J.P refused to have sex with defendant, he threatened to kill her with a gun, then dragged her by the hair into the bedroom and forced her to have sex with him.

Following their conversation, C.M. and J.P. went home and confronted defendant. He grabbed J.P. by the throat and struck her near her eye. Defendant threatened them not to tell anyone about the incident, while pointing a pistol at them, or else he would report them to immigration authorities. He also told C.M. that "something will happen" to her children.

A-0434-17T4

C.M. attempted to call the police but defendant threw her phone to the ground. Ultimately, J.P. contacted the police. Initially, C.M. lied to the police and told them that her dispute with defendant was over J.P.'s cell phone privileges because she feared being deported. At a later time, C.M. told the police she caught defendant sexually abusing J.P. After being threatened again by defendant, C.M. recanted her story. J.P. similarly refused to undergo a gynecological examination related to the alleged abuse and told the doctor she fabricated the allegations. Thereafter, defendant sent J.P. on a one-way trip to Mexico to live with C.M.'s friends.

At trial, O.P. testified that on another occasion, he observed defendant leaving J.P.'s bedroom in his underwear, and defendant warned O.P. that he would "send [him] to Mexico" if he told anyone. Thereafter, defendant made death threats against O.P.

Evidence was also presented that defendant sexually assaulted M.P. He forced M.P. to get in his car, took her to his house, and forced her to have sex with him. Defendant showed M.P. a gun and threatened to deport her family if she told anyone about the incident. Sometime between April and June 2010, defendant went to the bakery where M.P. worked and asked her to come to his

house, but she refused. Meanwhile, C.M. left defendant in June 2010, and moved her children out of the home.

On June 21, 2010, M.P. exited a laundromat and observed defendant following her. She entered a nearby Burger King and asked the cashier to call the police. Defendant followed her into the Burger King and requested that she go home with him. Before the police arrived, defendant walked away and left his car in the parking lot.

State Trooper Brian Stanker responded and observed M.P. to be visibly shaken. At trial, Stanker testified that he reviewed the security footage video which showed defendant and M.P. speaking outside the restaurant, and after she went inside, defendant tried to watch her through the windows. M.P. reported defendant's sexual abuse to Detective Adam Capoferri of the New Jersey State Police.

Defendant denied the allegations, claiming that he was suffering from erectile dysfunction since 2007 and therefore, it was impossible for him to have committed the sexual assaults. At trial, he testified about various erectile dysfunction medications he took but did not work. He also denied threatening C.M., J.P., or M.P.

In January 2011, the Cumberland County Prosecutor's Office arranged for J.P. to return to the United States legally, and she gave a statement to Detective Capoferri about defendant's sexual abuse.

At the conclusion of trial, a jury convicted defendant on all nine counts. The judge imposed an aggregate prison term of thirty-eight years, with thirty-four years subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, Parole Supervision for Life, N.J.S.A. 2C:43-6.4, Megan's Law, N.J.S.A. 2C:7-1 to -23, fines, penalties, and $1470 in restitution to the VCCO.

On appeal, defendant argues the following points:

> POINT I
>
> THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN NOT SEVERING COUNTS RELATING TO DIFFERENT WITNESSES AND EVENTS (Not Raised Below); IN ADMITTING IRRELEVANT AND PREJUDICIAL OTHER-CRIME EVIDENCE (Partially Raised Below); AND IN NOT INSTRUCTING THE JURY ON HOW TO CONSIDER THE EVIDENCE. (Not Raised Below).
>
> A.    The Trial Court Committed Plain Error By Not Severing The Counts Concerning Different Incidents And Witnesses.
>
> B.    The Trial Court Committed Plain Error In Admitting Other-Crime Evidence Of Defendant Allegedly Stalking And Twice Attempting To Kidnap A Complaining Witness.

A-0434-17T4

C. The Trial Court Committed Reversible Error In Admitting Bad-Act Evidence Of Defendant Allegedly Threatening, Stalking, And Abusing The Witnesses.

D. The Trial Court Committed Plain Error In Not Instructing The Jury To Consider The Offenses Separately And To Not Use Them Or The Bad-Act Evidence For Propensity.

POINT II

A NEW TRIAL IS REQUIRED BECAUSE THE STATE UNFAIRLY BOLSTERED ITS CASE WITH IMPROPER HEARSAY TESTIMONY (Not Raised Below), OPINION TESTIMONY (Not Raised Below), TESTIMONY THAT VIOLATED THE BEST-EVIDENCE RULE, AND TESTIMONY AIMED AT APPEALING TO THE JURY'S EMOTIONS. (Partially Raised Below).

A. The Trial Court Committed Plain Error In Admitting Corroborative Hearsay Testimony About The Allegations.

B. The Trial Court Committed Plain Error In Admitting Opinion Testimony Regarding Defendant's Guilt.

C. The Trial Court Committed Reversible Error In Allowing Testimony About What Was On A Surveillance Video That Was Not Presented At Trial.

D. The Trial Court Committed Reversible Error In Allowing The State To Elicit Irrelevant And Highly Inflammatory Testimony Aimed At The Jury's Emotions.

7

POINT III

REVERSAL IS REQUIRED BECAUSE THE PROSECUTOR ENGAGED IN REVERSIBLE MISCONDUCT AIMED AT IMPROPERLY BOLSTERING THE STATE'S CASE AND DISPARAGING THE DEFENSE. (Not Raised Below).

POINT IV

THE CUMULATIVE EFFECT OF THE TRIAL ERRORS DEPRIVED DEFENDANT OF DUE PROCESS AND A FAIR TRIAL AND WARRANTS REVERSAL OF HIS CONVICTIONS. (Not Raised Below).

POINT V

RESENTENCING IS REQUIRED BECAUSE THE COURT FAILED TO ADDRESS REQUESTED MITIGATING FACTORS; RESTITUTION WAS ORDERED FOR A NON-VICTIM; THE COURT DID NOT HOLD A HEARING ON THE FINES TO BE PAID; AND THE $30-PER MONTH SEX OFFENDER FINE WAS UNCONSTITUTIONALLY IMPOSED.

A.    The Trial Court Erred In Failing To Address The Mitigating Factors Raised By The Defense.

B.    The Trial Court Erred In Imposing Restitution For A Non-Victim And In Doing So Without A Hearing.

C.    A Remand Is Required Because The Trial Court Imposed $3000 In SCVTF Penalties Without A Hearing.

A-0434-17T4

> D. A Remand Is Required To Remove The $30-Per-Month Sex Offender Supervision Fee.

## II.

A. <u>Severance</u>

Defendant argues that the trial court erred by failing to sever the counts of the indictment as to J.P. and M.P. This issue was not raised below. Therefore, we must consider whether the court's failure to sever the charges for trial was erroneous and, if so, whether it constituted plain error, which is an error "clearly capable of producing an unjust result." <u>R.</u> 2:10-2. He further claims the trial court erred by allowing other crime evidence to be admitted as inherently prejudicial.

<u>Rule</u> 3:15-2(b) provides that the court may order separate trials if "it appears that a defendant or the State is prejudiced by a permissible or mandatory joinder of offenses . . . ." In determining if joinder is prejudicial to a defendant, the court considers whether, if the crimes were tried separately, evidence of the severed offenses "would be admissible under [Rule 404(b)] in the trial of the remaining charges." <u>State v. Chenique-Puey</u>, 145 N.J. 334, 341 (1996) (alteration in original) (quoting <u>State v. Pitts</u>, 116 N.J. 580, 601-02 (1989)); <u>State v. Oliver</u>, 133 N.J. 141, 150-51 (1993).

Defendant argues he was prejudiced by the charges involving C.M. and J.P. being tried together with those involving M.P. because "their simultaneous presentation was clearly capable of influencing the jury's deliberations," and the sexual assaults of each sister were "not relevant to each other." He contends that the alleged assaults on J.P. and related threats to her and C.M. (counts one through six) occurred on different dates, in different places and under different circumstances from the alleged assaults on M.P. (counts seven through nine). We are not persuaded by these arguments.

Rule 3:7-6 provides:

> Two or more offenses may be charged in the same indictment or accusation in a separate count for each offense if the offenses charged are of the same or similar character or are based on the same act or transaction or on [two] or more acts or transactions connected together or constituting parts of a common scheme or plan. Relief from prejudicial joinder shall be afforded as provided by R. 3:15-2.

Rule 3:15-1 provides:

> (a) Permissible Joinder. The court may order [two] or more indictments or accusations tried together if the offenses and the defendants, if there are [two] or more, could have been joined in a single indictment or accusation. The procedure shall be the same as if the prosecution were under such single indictment or accusation.

> (b) Mandatory Joinder. Except as provided by R. 3:15-2(b), a defendant shall not be subject to separate trials for multiple criminal offenses based on the same conduct or arising from the same episode, if such offenses are known to the appropriate prosecuting officer at the time of the commencement of the first trial and are within the jurisdiction and venue of a single court.

If, however, "it appears that a defendant or the State is prejudiced by a permissible or mandatory joinder of offenses or of defendants in an indictment or accusation, the court may order an election or separate trials of counts . . . ." R. 3:15-2(b). Rule 3:15-2(c) provides that "[a] motion for separate trial of counts of an indictment or accusation must be made pursuant to R. 3:10-2, unless the court, for good cause shown, enlarges the time."

We note that neither party moved for severance here. And, "[t]he decision whether to grant severance rests within the trial court's sound discretion and is entitled to great deference on appeal." State v. Brown, 118 N.J. 595, 603 (1990). Further, a trial judge has the discretion to "order separate trials on counts of an indictment if a party is prejudiced by their joinder." Oliver, 133 N.J. at 150.

Specifically, "[t]he test for assessing prejudice is 'whether, assuming the charges were tried separately, evidence of the offenses sought to be severed would be admissible under [Rule 404(b)] in the trial of the remaining charges.'" State v. Sterling, 215 N.J. 65, 73 (2013) (alteration in original) (quoting

11

Chenique-Puey, 145 N.J. at 341). The judge properly tried the charges together.

We consider next defendant's argument regarding the admission of other bad acts evidence. Rule 404(b) provides:

> [E]vidence of other crimes, wrongs, or acts is not admissible to prove the disposition of a person in order to show that such person acted in conformity therewith. Such evidence may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident when such matters are relevant to a material issue in dispute.

Our Supreme Court has set forth the following criteria for admitting other-crimes evidence under Rule 404(b):

> 1. The evidence of the other crime must be admissible as relevant to a material issue;
>
> 2. It must be similar in kind and reasonably close in time to the offense charged;
>
> 3. The evidence of the other crime must be clear and convincing; and
>
> 4. The probative value of the evidence must not be outweighed by its apparent prejudice.
>
> [State v. Cofield, 127 N.J. 328, 338 (1992) (citation omitted).]

The trial court's analysis under Cofield should only be disturbed if there is a "clear error of judgment." State v. Gillispie, 208 N.J. 59, 84 (2011) (quoting State v. Barden 195 N.J. 375, 390-91 (2008)).

Our careful review of the record reveals there was no undue prejudice resulting from the joint trial. Here, under the first Cofield prong, defendant's sexual assault of J.P., and his threats to her and C.M., are relevant to his sexual assault of M.P. And, defendant's sexual assault of M.P. is relevant to his sexual assaults of J.P. and related threats to her and C.M. In a similar vein, defendant's threats to call immigration officials regarding both daughters were based on his knowledge that they were undocumented. We reject defendant's argument that these offenses were not part of a common plan or scheme.

Under the second Cofield prong, the acts were similar in kind and reasonably close in time. Defendant's sexual assaults of J.P. occurred from mid-2008 through late 2009 in his home. Defendant's sexual assaults of M.P. began in the first six months of 2010, shortly after he sent J.P. to Mexico. Like the sexual assaults on J.P., the acts against M.P. were committed in defendant's home. In both cases, defendant threatened to harm or kill the victims, and manipulated them by taking advantage of their undocumented status as a means of ensuring their silence.

A-0434-17T4

Under the third <u>Cofield</u> prong, there was clear and convincing evidence to show that defendant committed both sets of crimes. J.P. and M.P. presented credible and consistent allegations against defendant at trial. C.M. and O.P. confirmed many of these allegations based upon their own personal observations. Moreover, the responding officer's testimony corroborated J.P. and M.P.'s version of the events that transpired.

Finally, under the fourth <u>Cofield</u> prong, the probative value in this case is not outweighed by any prejudicial effect. The evidence showed the feasibility of defendant sexually assaulting J.P. and M.P. in his home. Further, his persistent threats regarding deportation explain why the victims did not immediately come forward. We conclude defendant's claim that other crime evidence has a "unique tendency to turn a jury against the defendant," <u>State v. Reddish</u>, 181 N.J. 553, 608 (2004) (quoting <u>State v. Stevens</u>, 115 N.J. 289, 302 (1989)), is overcome by the highly probative evidence here.

B.     <u>Stalking and Attempted Kidnapping of M.P.</u>

Defendant argues that he was prejudiced by the admission of evidence of his bad acts in stalking and attempting to kidnap M.P. in 2010, for which he was never charged. We are not persuaded by this argument.

M.P. testified about defendant showing up at two of her workplaces and attempting to force her back to his house. Defendant did not object to her testimony.

Bad act evidence must be limited "by confining its admissibility to those facts reasonably necessary" to prove the issue. State v. Fortin, 318 N.J. Super. 577, 598 (App. Div. 1999). Such evidence may not be used to "suggest that because the defendant is a person of criminal character, it is more probable that he committed the crime for which he is on trial." State v. Weeks, 107 N.J. 396, 406 (1987) (citation omitted).

M.P.'s testimony was properly admitted. We reiterate that the four Cofield prongs were met. Moreover, Stanker's testimony confirmed that M.P. and defendant had an encounter at Burger King. The stalking and kidnapping episodes show defendant's predatory plan towards M.P. and his repeated opportunities to abduct and assault her. The acts are also relevant to demonstrate defendant's sexual abuse of J.P., and related threats to her and C.M., based upon his paternal and marital connection to the victims.

C.    Threatening, Stalking, and Abusing O.P. and J.P.

Next, defendant argues that the judge erred in admitting bad act evidence of his threat to kill O.P., defendant's contacting J.P. while she was in Mexico,

and evidence of his intoxication on November 10, 2009, the same day as one of the sexual assaults of J.P. Again, we reject defendant's arguments.

O.P. testified that after he saw defendant emerge from J.P.'s bedroom, defendant repeatedly threatened to have him deported or killed if he told anyone. J.P. testified that while in Mexico, she frequently moved because defendant called her and told her he wanted to visit her. Defense counsel did not object to this testimony. However, State Trooper Brian McCarty testified that defendant was intoxicated on November 10, 2009, at his home, and defense counsel objected to the characterization of defendant as being intoxicated. We review the former statements under a plain error standard, but reference to defendant's alleged intoxication is reviewed under the harmful error standard. State v. Gorthy, 226 N.J. 516, 539 (2016); R. 2:10-2.

Under the first Cofield prong, defendant's threats to O.P., his contacting J.P. while she was in Mexico, and evidence of his intoxication were all relevant to the crimes charged. And, his intoxication is relevant as to his state of mind and motive for his conduct on November 10, 2009.

Under the second Cofield prong, the acts were similar in kind and reasonably close in time to the crimes charged—they occurred only within a few weeks of the sexual assaults. Under the third Cofield prong, C.M., O.P., and

16

J.P. credibly testified about these acts, and McCarty's testimony established defendant's intoxication. Under the fourth Cofield prong, the evidence collectively was highly probative as to how defendant took advantage of his marital relationship with C.M.

D.    Jury Charge

Next, defendant argues for the first time on appeal, that the judge committed plain error by failing to instruct the jury that each offense must be considered separately, and evidence regarding some victims cannot be used as evidence that defendant had a propensity to commit the offenses regarding other victims. He also argues that the judge did not properly instruct the jury not to consider the cumulative impact of all of the offenses.

The State contends that the testimony regarding defendant's visits to M.P.'s workplace is not evidence of other crimes because no charges arose from these incidents. Hence, there was no need to instruct the jury on the limited purpose for which the jury could consider the statements.

At the charge conference, neither defendant nor the State sought a limiting instruction on the other crimes or bad acts evidence, nor did they object to the court's proposed final charge. Because defendant did not bring this issue to the attention of the trial judge, we review it under a plain error standard. R. 2:10-

2.  When we review an issue under the plain error standard, we will not reverse a conviction unless an error committed at trial was "clearly capable of producing an unjust result . . . ." Ibid.  The error must have been "sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached[.]"  State v. McGuire, 419 N.J. Super. 88, 106-07 (App. Div. 2011) (alteration in original) (quoting State v. Taffaro, 195 N.J. 442, 454 (2008)).

The jury charge did not include any instruction on the use of other crimes or bad acts evidence.  And, where multiple charges are tried together as was the case here, the model jury charge provides for an instruction directing the jury to consider the charges separately.  See Model Jury Charges (Criminal), "Multiple Charges" (rev. Jan. 14, 2013).  The State argues that defendant has waived this argument by not raising it below.

Considering that defendant's visits to the bakery and Burger King to see M.P. did not result in charges being pressed against defendant, and thus, did not invoke Rule 404(b), we discern no prejudice or error.  Moreover, the evidence against defendant here was overwhelming.  Trial errors may be found harmless when evidence of guilt is overwhelming.  See Gillespie, 208 N.J. at 93 (2011).

We conclude the error was harmless in light of the strength of the evidence connecting defendant to the crimes. Therefore, we reject defendant's contention.

III.

A.      Hearsay Testimony

For the first time on appeal, defendant contends the trial judge's admission of four instances of "hearsay" testimony was an abuse of discretion resulting in plain error, which violated the hearsay rules. Specifically, he alleges that the judge erred by permitting the following testimony:

> (1)   M.P.'s testimony that defendant sent her to Mexico;
>
> (2)   O.P.'s testimony that he learned defendant sexually assaulted J.P.;
>
> (3)   C.M.'s testimony that she learned defendant sexually assaulted M.P.; and
>
> (4)   McCarty's testimony that he received "alternative information" corroborating the sexual assault of J.P.

Hearsay is an out-of-court statement "offered in evidence to prove the truth of the matter asserted." N.J.R.E. 801(c); see also State v. Savage, 172 N.J. 374, 402 (2002). We review the admission of evidence employing an abuse of discretion standard.

At trial, M.P. was asked, "[w]hen [J.P.] was sent to Mexico, at the time, did you know why she was sent to Mexico" and M.P. replied "[b]ecause [defendant] had sent her." Next, O.P. described the police visit to his home on November 10, 2009. When asked "did you find out that defendant sexually assaulted [J.P.]," he replied "[y]es". Further, the prosecutor asked C.M., "[w]as there a point in time that you found out that your other daughter, [M.P.], had been sexually assaulted by the defendant," and she replied "[y]es". Defense counsel did not object to any of this testimony.

Lastly, McCarty testified after he established that defendant had claimed the November 10, 2009 incident was related to J.P.'s phone privileges:

> Prosecutor: Now you spoke with other parties on scene, correct?
>
> McCarty: Yes.
>
> Prosecutor: And is it true that they provided alternative information regarding what happened?
>
> McCarty: Yes.

McCarty did not specify what this alternative information was, nor did he recite statements from others. Again, defense counsel did not object.

Because none of the testimony was hearsay, there was no error in admitting it. M.P. testified based upon her own personal knowledge. O.P.'s

20

testimony was not offered to prove that the sexual assault happened but to describe his own perception and recollection surrounding the sexual assault and to establish when he became aware of the allegations made by his sister. C.M.'s testimony indicated when she became aware of the accusations against defendant, not to prove that the sexual assault occurred. Lastly, McCarty's testimony was not hearsay because he merely recounted his observations and experiences in responding to an emergency and simply acknowledged there were conflicting reports.

B.   Opinion Testimony

Next, defendant argues that the judge committed plain error by admitting opinion testimony by McCarty about J.P. sustaining injuries consistent with an assault on November 10, 2009. At trial, the prosecutor asked McCarty about his investigation on November 10, 2009: "[C]ould you observe any signs of injury on [J.P.] that would have corroborated the allegation of simple assault?" He replied "[y]es," and described the bruises on J.P.'s neck, face, and arms which led him to arrest defendant for simple assault. Defendant did not object to this testimony, and therefore, we review it under the plain error standard.

Under Rule 701, if a witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences may be admitted if it "(a) is

rationally based on the perception of the witness and (b) will assist in understanding the witness's testimony or in determining a fact in issue."

"Courts in New Jersey have permitted police officers to testify as lay witnesses, based on their personal observations and their long experience in areas where expert testimony might otherwise be deemed necessary." State v. LaBrutto, 114 N.J. 187, 198 (1989). However, a police officer may not provide testimony on the ultimate issue of guilt or innocence. State v. McLean, 205 N.J. 438, 461 (2011); State v. Odom, 116 N.J. 65, 77 (1989).

Here, McCarty merely reported his observations of J.P.'s injuries based upon his perception and lay observation. He did not opine as to defendant's guilt and therefore, we reject defendant's contention.

C.    Best Evidence Rule

Next, defendant argues that the judge erred in allowing Stanker to testify about the contents of the Burger King surveillance video despite it not being played to the jury, in violation of the best evidence rule. N.J.R.E. 1002.

Stanker explained that after speaking with M.P. at the Burger King, he viewed the restaurant's surveillance tape. He testified that,

> the surveillance showed [M.P.] pulling into the parking lot at which time [defendant] pulled up alongside of her vehicle, where they had a short conversation. [M.P.] pulled into a parking spot[,] and [defendant] pulled the

van next to her vehicle as well. He -- she exited her vehicle to go into the Burger King. He later backed his van up into the parking spot adjacent to hers across from the next row of spots.

And while she was inside the Burger King, the surveillance revealed that, you know, he pulled forward and back several times. It appeared as though he was trying to watch her through the windows of the Burger King. And then he later exited his vehicle and walked into the Burger King.

Once in there, the surveillance showed him exiting the doors to the west side of the Burger King, and he went south. There's a lot on the north side and a lot on the south side as well. He walked out toward the lot on the south side. And that's as far as we could see on the surveillance.

Stanker testified that he was unable to obtain a copy of the surveillance tape. Defendant objected to Stanker's testimony, but the judge allowed the testimony because the video's contents were described in Stanker's police report, and he was subject to cross-examination.

We review a trial court's evidentiary rulings for abuse of discretion. Gorthy, 226 N.J. at 539. Thus, "trial courts are granted broad discretion in making decisions regarding evidentiary matters . . . ." State v. Scharf, 225 N.J 547, 572 (2016) (citations omitted). This court will reverse an evidentiary ruling only if it "was so wide off the mark that a manifest denial of justice resulted."

Griffin v. City of E. Orange, 225 N.J. 400, 413 (2016); Green v. N.J. Mfrs. Ins. Co., 160 N.J. 480, 492 (1999).

The "best evidence" provisions in Rule 1002, provide that "[t]o prove the content of a writing or photograph, the original writing or photograph is required except as otherwise provided in these rules or by statute." Rule 1001(b) clarifies that video tapes fall within the purview of Rule 1002. However, Rule 1004 provides:

> The original is not required and other evidence of the contents of a writing or photograph is admissible if:
>
> (a) Originals lost or destroyed. All originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith; or
>
> (b) Original not obtainable. No original can be obtained by any available judicial process or procedure or by other available means. . . .

A criminal defendant must demonstrate any prejudice as a result of the prosecution's negligent loss or destruction of evidence in order to bar the State from presenting testimony regarding that evidence. California v. Trombetta, 467 U.S. 479, 488–91 (1984); State v. Hollander, 201 N.J. Super. 453, 478–80 (App. Div. 1985); State v. Serret, 198 N.J. Super. 21, 26–27 (App. Div. 1984); State v. Washington, 165 N.J. Super 149, 155–56 (App. Div. 1979).

Where evidence is not being offered to prove the truth of its contents, but rather as corroborative evidence of facts in evidence as here, testimony regarding the contents will suffice. Nerney v. Garden State Hosp., 229 N.J. Super. 37, 39 (App. Div. 1988). Here, the testimony about the contents of the surveillance video was not offered for its substantive truth, but rather to corroborate M.P.'s testimony that she had an encounter with defendant at Burger King. Thus, under Nerney, we conclude Stanker's testimony was corroborative and permissible.

Furthermore, defendant has not demonstrated substantial prejudice arising from the absence of the video or from Stanker's testimony regarding its contents. The surveillance video was not referenced to prove that he committed any of the crimes alleged, as none of the charges against defendant arise from the Burger King incident, but merely corroborated M.P.'s testimony that she spoke with defendant at Burger King. Therefore, we reject defendant's argument.

D. Testimony Aimed at the Jury's Emotions

Next, defendant argues reversal is required because the prosecutor elicited irrelevant and inflammatory testimony about J.P.'s loss of virginity, her difficulty in testifying, and her views about defendant. No objection was raised at trial. He also argues J.P. characterized him as "a wolf" and claims the court

abused its discretion in admitting the testimony, over objection. J.P. testified that losing her virginity to defendant was the "worst feeling in the world," and it was not easy to share this information with strangers on the jury.

During cross-examination, defense counsel asked J.P. if she had heard of the children's story "The Boy Who Cried Wolf," and implied that J.P. was similar to the main character because she had initially lied to police about the encounters with defendant. Later, J.P. testified on redirect:

> Prosecutor: [Defense counsel] also used an analogy about The Boy That (sic) Cried Wolf. And didn't -- and you're familiar with that story, aren't you?
>
> J.P: Yes.
>
>   . . . .
>
> Prosecutor: Has there always been a wolf in this case?
>
> J.P: Yes.
>
> Prosecutor: And who is that wolf?
>
> J.P.: [Defendant.]

We consider the first three statements under the plain error standard, Rule 2:10-2, because there was no objection, but J.P.'s characterization of defendant as a wolf is considered under the abuse of discretion standard in light of the objection raised. See Gorthy, 226 N.J. at 539.

Statements intended to arouse sympathy for a witness and anger toward a defendant are not permitted.  State v. Timmendequas, 161 N.J. 515, 693 (1999), (citing State v. W.L., 292 N.J. Super. 100, 110-11 (App. Div. 1996)).  It is improper to refer to defendants as animals or engage in derogatory name calling. State v. Williams, 113 N.J. 393, 455 (1988).  However, in State v. T.E., 342 N.J. Super. 14, 27 (App. Div. 2001), the court allowed graphic testimony by the child victim in a sexual assault case over the defendant's objection that the State used the victim as a "trial tool" to evoke the jury's sympathy.

Here, J.P.'s statements do not rise to the level of being prejudicial or inflammatory.  Her testimony was relevant to material facts in the determination of defendant's guilt.  J.P.'s statements about virginity demonstrate her moral character and her unwillingness to have sexual relations with defendant.  Even where evidence is highly damaging to a defendant's case, this cannot serve as an independent basis to exclude otherwise admissible and probative evidence. State v. Brockington, 439 N.J. Super. 311, 333 (App. Div. 2015).

J.P.'s testimony referring to defendant as a "wolf" was not error because it showed her sexual acts with defendant were not consensual.  And, it was in response to defense counsel's characterization of J.P. as a "girl who cried wolf." Therefore, we reject defendant's arguments.

A-0434-17T4

## IV.

Next, defendant maintains he was denied a fair trial when the prosecutor, in her opening statement to the jury, said the case was about "fear, threats, and control" over the family. Further, the prosecutor stated defendant purchased J.P.'s plane ticket to Mexico, and her return was one of C.M.'s "biggest fears." The prosecutor also stated that C.M. and J.P. initially lied to police in November 2009 and denied sexual abuse by defendant but later told the police defendant "did something very similar" to J.P. as he had done to M.P. These statements did not elicit any objections.

In our review, we must determine whether the statements complained of wrongly contributed to defendant's conviction. See State v. Bankston, 63 N.J. 263, 272 (1973). Defendant contends that the statements amounted to misconduct requiring reversal. While prosecutors occupy a special position in our system of criminal justice, see, e.g., State v. Daniels, 182 N.J. 80, 96 (2004), they are nevertheless entitled to zealously argue the merits of the State's case. State v. Smith, 212 N.J. 365, 403 (2012). "The duty of the prosecutor 'is as much . . . to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.'" Ibid. (alteration in original) (quoting State v. Frost, 158 N.J. 76, 83 (1999)).

Even if the prosecutor exceeds the bounds of proper conduct, "[a] finding of prosecutorial misconduct does not end a reviewing court's inquiry because, in order to justify reversal, the misconduct must have been 'so egregious that it deprived the defendant of a fair trial.'" State v. Smith 167 N.J. 158, 181 (2001) (quoting Frost, 158 N.J. at 83). One factor to consider is whether there was a proper and timely objection to the comment, State v. Jackson, 211 N.J. 394, 409 (2012), because the lack of any objection indicates defense counsel "perceived no prejudice." Smith, 212 N.J. at 407.

Following our review of the record, we conclude any error by including these statements by the prosecutor was harmless. We weigh heavily the fact that the comments did not evoke an objection or a subsequent request for a curative instruction.

Defendant also argues the prosecutor's summation improperly suggested he used "smoke and mirrors" regarding his erectile dysfunction to shift focus from "the actual proofs." Again, this statement did not elicit any objection. Prosecutors may not "make inaccurate legal or factual assertions during a trial" and "must confine their comments to evidence revealed during the trial and reasonable inferences to be drawn from that evidence." Smith, 167 N.J. at 178.

We again conclude any error by including this statement in summation by the prosecutor was harmless. And, no objection having been made to the remarks, we deem the remarks not to be prejudicial. Timmendequas, 161 N.J. at 576.

V.

Next, defendant claims that the cumulative effect of the trial errors undermined his rights to due process and a fair trial warranting reversal of his conviction. Defendant's argument is devoid of merit.

The cumulative effect of trial errors may merit reversal when it "casts doubt on the propriety of the jury verdict that was the product of that trial." State v. Jenewicz, 193 N.J. 440, 474 (2008). Reversal may be justified when the cumulative effect of a series of errors is harmful even if each error itself is harmless. Ibid. "[T]he predicate for relief for cumulative error must be that the probable effect of the cumulative error was to render the underlying trial unfair." State v. Wakefield, 190 N.J. 397, 538 (2007). Our careful review of the record convinces us that there is no cumulative effect of any trial errors warranting reversal.

A-0434-17T4

A.    <u>Sentence</u>

Defendant contends that his sentence was excessive.  Again, we disagree. He contends the sentencing judge failed to apply mitigating factors, ordered restitution for a non-victim, failed to conduct a hearing and make findings on certain penalties assessed, and unconstitutionally imposed the $30 per month SOSF penalty.

When we review a sentence, we do not substitute our own judgment for that of the sentencing court.  <u>State v. Natale</u>, 184 N.J. 458, 489 (2005).  We limit our inquiry to whether the sentencing guidelines were followed, whether there was competent and credible evidence supporting the application of the guidelines, and whether the sentence shocks the judicial conscience.  <u>Ibid.</u>

The sentencing judge found aggravating factors one, the nature and circumstances of the offense, N.J.S.A. 2C:44-1(a)(1); three, the risk of reoffending, N.J.S.A. 2C:44-1(a)(3); and nine, the need for deterrence, N.J.S.A. 2C:44-1(a)(9).  The judge found mitigating factor seven, because defendant had a criminal history, but it was primarily for old disorderly persons offenses, N.J.S.A. 2C:44-1(b)(7).

The court imposed a sentence of thirty-eight years of which thirty-four years are subject to NERA. The sentence included consecutive sentences of eighteen years subject to NERA for count one, four years for count four, eight years subject to NERA on counts seven and nine, and concurrent sentences on the remaining counts.

Defendant does not contest the aggravating factors; however, he argues the judge erred in failing to address mitigating factors eight through twelve. "[M]itigating factors that are suggested in the record, or are called to the court's attention, ordinarily should be considered and either embraced or rejected on the record." State v. Blackmon, 202 N.J. 283, 297 (2010). A trial court need not, "explicitly reject each and every mitigating factor argued by a defendant." State v. Bieniek, 200 N.J. 601, 609 (2010).

The sentencing judge reviewed defendant's history and concluded his conduct surrounding the crimes was "appalling." The judge also noted defendant preyed upon the victims' "perceived vulnerability to deportation." The record reflects that the sentencing judge considered the mitigating factors and its basis for rejecting them was implicit in its reasoning. We discern no error in the application of the guidelines and the sentence imposed does not shock the judicial conscience.

B.    Restitution

Next, defendant argues the sentencing judge erred in imposing restitution for a non-victim and in doing so without a hearing. We agree.

The VCCO submitted a letter to the judge stating it paid $1470 for M.P.'s psychological counseling bills in this matter and requested restitution in that amount. Defendant did not challenge the legitimacy or amount of the bills. His presentence report stated he had no assets or income.

Pursuant to N.J.S.A. 2C:43-3, the victim of a crime is entitled to receive restitution from the offender at the time of sentencing. Further, "[t]he court shall . . . order the defendant to pay any restitution ordered for a loss previously compensated by the Board to the [VCCO][2]."

Here, defendant's ability to pay restitution was disputed because he had no assets or income. The sentencing judge made no findings on this issue. Therefore, we remand to the sentencing judge to conduct a hearing relative to imposing restitution for a non-victim and whether a VCCO penalty is warranted.

---

[2] In 2008, the Violent Crime Compensation Board was renamed the Victims of Crime Compensation Office. NJ Victims of Crime Compensation Office – 2016 Annual Report, https://www.njleg.state.nj.us/OPI/Reports_ to_the_Legislature/ victims_of_crime_ar_2016.pdf.

A-0434-17T4

C.    SCVTF Penalty

Defendant also challenges the sentencing judge's imposition of a $3000 penalty payable to the SCVTF without a hearing or making any findings.

The sex offender penalty amounts listed in N.J.S.A. 2C:14-10 are the maximum penalties the court may impose. See State v. Bolvito, 217 N.J. 221, 224 (2014). In fixing the penalty amount, the court should consider the nature of the offense and the defendant's ability to pay. Id. at 233-35. The court should enter a statement of reasons as to the amounts imposed. Id. at 224; State v. Newman, 132 N.J. 159, 170 (1993); State v. Ferguson, 273 N.J. Super. 486, 499 (App. Div. 1994).

Here, defendant's presentence report indicates that defendant does not have the ability to pay any fines or restitution. Nonetheless, contrary to Bolvito, the sentencing judge made no findings as to his ability to pay and entered no statement of reasons as to the amounts imposed. Therefore, we reverse and remand for a hearing on the SCVTF penalty.

D.    SOSF Penalty

Lastly, defendant argues a remand is required because the $30 per month SOSF penalty was improperly imposed as an ex post facto law because the law establishing this penalty, N.J.S.A. 30:4-123.97, was not effective until July 1,

2014, more than four years after the last alleged incident in this case. He also alleges that the penalty should not be imposed because he had no income, and by its plain language, the penalty "shall not be assessed . . . if the person's income does not exceed 149 percent of the federal poverty level." N.J.S.A. 30:4-123.97.

At sentencing, the judge correctly found that the SOSF penalty was not applicable because the offense was committed before the effective date of N.J.S.A. 30:4-123.9. However, the JOC indicates that a $30 per month SOSF penalty was imposed under N.J.S.A. 30:4-123.97.

We reverse and on remand, direct the sentencing judge to remove the SOSF penalty and amend the JOC accordingly.

Affirmed in part, reversed and remanded in part for further proceedings consistent with our opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

35

A-0434-17T4